■ IRENE BUBBINS, Respondent, v HARRY BUBBINS, Appellant.—In a matrimonial action, the defendant father appeals from (1) so much of an order of the Supreme Court, Westchester County (Beisheim, J.), dated March 13, 1985, as limited his visitation rights with the parties' daughter, and (2) so much of a second order of the same court, also dated March 13, 1985, as suspended his visitation rights with the parties' daughter and eldest son for an indefinite period, ordered him to pay support for the daughter and eldest son, and denied the motion to have the Justice presiding at Special Term disqualify himself.

Appeal from so much of the first order dated March 13, 1985 as limited the father's visitation with the daughter dismissed, without costs or disbursements. That provision of the first order dated March 13, 1985 was superseded by the provision in the second order dated March 13, 1985 which indefinitely suspended visitation with the daughter.

Second order dated March 13, 1985 modified by deleting the second decretal paragraph thereof, which suspended the father's visitation with his daughter and eldest son for an indefinite period. As so modified, second order dated March 13, 1985 affirmed, insofar as appealed from, without costs or disbursements, and matter remitted to the Supreme Court, Westchester County, for further proceedings in accordance herewith. In the interim, visitation of the father with his daughter and eldest son shall continue to be suspended.

Pursuant to the terms of their 1982 judgment of divorce, the parties were awarded joint custody of their three children, with the children to reside with the plaintiff mother subject to the defendant father's liberal visitation privileges. In September 1983 the parties' eldest child, Harry Jr., refused to continue to visit his father. This problem, among others, was dealt with in the course of protracted postdivorce litigation.

After an in camera interview with Harry Jr., in early 1984, Justice George Beisheim found that the plaintiff was in no way responsible for the boy's reluctance to visit his father. On the other hand, the court found no valid reason why the elder son should not visit his father. Thereupon, the court, pursuant to the stipulation of the parties, modified the visitation arrangement solely with regard to Harry, Jr., for a limited interval of three months after which the situation would be reviewed in order to effectuate a return to the visitation schedule set forth in the judgment of divorce. An order dated May 10, 1984, encompassing said provision, was thereafter entered with the Westchester County Clerk.

Notwithstanding the May 10, 1984 order, Harry Jr., persisted in refusing to visit his father. Accordingly, defendant moved for an order compelling plaintiff to provide him with visitation with their elder son. After an off-the-record conference with the parties, the court made an oral ruling on July 30, 1984 limiting defendant's visitation rights with respect to both Harry Jr. and the parties' daughter Adrienne. The limitation was intended to reduce the length of the visitation period, apparently to make it more palatable to those children, who had refused to visit with their father, and was to be effective until December 21, 1984. The court noted its intention to continue jurisdiction with regard to the subject matter. That oral ruling was not reduced to writing until March 13, 1985, and it comprises the first of the orders of that date sought to be reviewed on the instant appeals. Defendant purportedly appeals therefrom to the extent that his visitation with his daughter was curtailed thereby.

On December 21, 1984, the parties once again convened before Justice Beisheim to resolve the problem of the children's noncompliance with the terms of the prior visitation orders. At that point, the parties' youngest child had been residing with the defendant full time for some five months and had been attending school in Yonkers. At the conclusion of the hearing, the court curtailed all visitation rights of defendant with respect to the two eldest children, based upon its finding that defendant had "brainwashed" the youngest

son against the mother and was not fit to exercise visitation rights with the remaining children. Defendant was directed to deliver the youngest child to plaintiff's home for visitation every Saturday morning and to pick him up again on Sunday evenings. Defendant was further ordered to pay arrears or risk losing custody of the youngest child. His support obligation was reduced from $100 to $70 per week. In the second of the orders dated March 13, 1985, Justice Beisheim, *inter alia,* ordered that defendant's visitation rights with respect to the two elder children be suspended for an indefinite period, ordered him to continue paying support for those children and denied defendant's motion to disqualify himself from the case. Defendant now appeals from those provisions of said order.

The father contends that Justice Beisheim was influenced by a personal bias against him. This claim is wholly without merit. The court's findings were supported by the evidence and a review of the record indicates that Justice Beisheim made every effort to be fair in a very difficult situation. At no time did Justice Beisheim demonstrate a personal bias against the father.

However, the court did err in its determination to completely suspend the father's visitation with his daughter and his eldest son. The denial of visitation rights to a natural parent is such a drastic remedy that it should only be considered when there is substantial evidence that visitation would be detrimental to the welfare of the child *(see, Janousek v Janousek,* 108 AD2d 782; *Katz v Katz,* 97 AD2d 398; *Parker v Ford,* 89 AD2d 806; *Hotze v Hotze,* 57 AD2d 85, *lv denied* 42 NY2d 805). While evidence of "brainwashing" may indicate that the father's visitation could be detrimental to the welfare of his children, under the circumstances of this case a denial of all visitation is too severe. Therefore, the matter is remitted to Special Term to determine an appropriate form of visitation with the daughter and eldest son. We also recommend that psychiatric evaluation of the parties and their children should be conducted forthwith, with a hearing to be held immediately thereafter.

We have considered the father's contention that the court erred by ordering him to pay child support for his eldest son and daughter and find it to be without merit. Lazer, J. P., O'Connor, Weinstein and Niehoff, JJ., concur.