OPINION OF THE COURT
James F. X. Doyle, J.
By way of order to show cause, the petitioner, a resident *455 alien, seeks an order of this court, inter alia, awarding him scheduled visitation rights with his two children, to wit, Anthony, date of birth March 28, 1978 and Vanessa, date of birth June 8, 1983. After numerous adjournments of the preliminary proceedings the matter was ultimately heard on the merits. Based upon the evidence adduced, including the testimony of the petitioner, respondent, respondent’s expert, and the reports of the court’s consultation services center, the court makes the following determination:
Petitioner and respondent were married on June 22, 1976 and subsequently divorced by judgment entered in Suffolk County on August 21, 1983. There are two issue of the marriage, Anthony, age 10 and Vanessa, age 4, who have been in respondent’s custody, without interruption, since the time of the parties’ divorce. The divorce decree, while awarding the custody of the infants to the respondent mother, made no provision for visitation by the petitioner father, inasmuch as the petitioner was incarcerated at the time. The divorce decree specifically deferred all issues of visitation to the Family Court for future proceedings.
Petitioner was incarcerated on a felony robbery charge from April 1983 to April 1986. At the time of his incarceration, his son Anthony was 5 years old and his daughter Vanessa was unborn (respondent was pregnant with Vanessa at the time). During the petitioner’s three-year prison term, there was some contact and visitation with Anthony in the early stages of the sentence, although same ended when petitioner was transferred to a facility upstate. This proceeding was commenced and initially calendared prior to the petitioner being paroled.
Respondent resists any visitation by petitioner for several reasons. Initially, she contends that the petitioner is a convicted felon, a drug abuser with a violent disposition who should not have any contact with the children. She also claims that visitation would not be in the children’s best interests since petitioner is, for all intents and purposes, an unknown stranger, especially to the youngest child, Vanessa. Finally, respondent avers that the petitioner is about to be deported from the country and, for that reason, the children should not be subjected to contact with him since she claims it will be terminated in the very near future by the deportation.
With regard to the last issue, the respondent offered the testimony of an expert (Dr. Rubins) who explained that visita *456 tion at this point would be psychologically damaging to the children if the initial contact were terminated shortly after the visitation commenced. The expert indicated that a temporary short-term reintroduction of the father into the lives of the children, only to have the father absent again via deportation, would be inimitable to the welfare of the infants. The doctor suggested that such a brief relationship would do more harm than good inasmuch as the children would only suffer again from the father’s sudden departure if he were deported.
The court accepts the expert’s conclusions in part. Here the proceeding has spanned sufficient time so that if deportation were imminent adequate opportunity has been provided for Federal officers to timely conclude their proposed action. Further, to the extent that the expert concludes that no visitation should be allowed if it were to be terminated in the near future is grounded on the conclusion that actual deportation would result in absolute termination of all contact between the petitioner and the children. Indeed, there is nothing in the record to indicate that the petitioner would be incapable of maintaining some relationship with his children even if he were expelled from the country and deported to Italy, his native country, and to this extent the court rejects the conclusion of the expert.
The court notes that the evidence of the father’s "rehabilitation” from drug use is quite positive. Tests performed for the purpose of this litigation demonstrate that the petitioner is at least now drug free and otherwise not incapacitated by mental defect or personality disorder. Indeed, the CCU reports, and the petitioner’s own demeanor and character as reflected on the witness stand, constrain the court to find that the petitioner’s prior criminal and drug involvement ought not be a barrier to his having visitation with his two children. Nor can it be said that the petitioner purposefully and intentionally "abandoned” his children during the three years that he was incarcerated from April 1983 through April 1986. While the petitioner was lodged in the local jail facility, there was, in fact, substantial contact with the boy, Anthony. However, when petitioner was transferred to an upstate facility approximately one year later, the visitation basically stopped, albeit due to the respondent’s own inaction.
On balance, the court does not believe that the petitioner’s criminal background or his three-year prison sentence are sufficient grounds, in and of themselves, to warrant the termination of parental visitation. Further, upon consideration of *457 the effect that petitioner’s absence (as well as his history) has had upon the children’s psychological well being, the court still finds that visitation should not be terminated.
In this regard, the court recognizes that the children do not presently have a relationship or bond with the petitioner and that they are anxious and somewhat fearful of the prospect of visitation with him. The respondent’s expert made it quite clear that, in his opinion, the children would be psychologically damaged by the visitation, if deportation were imminent, but that if more time for visitation was available he supported contact between the father and his children as being in their best interests. Additionally, CCU evaluations which the respondent mother refused to attend and otherwise failed to bring the children to suggested that visitation is appropriate, assuming it would initially be supervised.
The court is further bound to follow the settled law relative to visitation by a noncustodial parent. As was stated by the Appellate Division in Katz v Katz, (97 AD2d 398 [2d Dept 1983]): "Denial of visitation rights to a natural parent is a drastic remedy which should only be invoked for compelling reasons, and only when there is substantial evidence that visitation would be detrimental to the child * * * Tn the absence of a "pressing concern” and proof that visitation is "inimical to the welfare of the children”, the parent to whom custody is not awarded must be granted reasonable visitation privileges’ ”. The rule espoused in Katz v Katz, has been consistently affirmed in the courts (Bubbins v Bubbins, 114 AD2d 346; Janousek v Janousek, 108 AD2d 782) in cases with fact patterns similar to the one at bar. (See, Matter of Eric L. v Dorothy L., 130 AD2d 660 [2d Dept 1987].)
The only factor in this proceeding which presents a unique obstacle to visitation is the allegedly imminent deportation of the petitioner by the United States Immigration and Naturalization Service. In this regard, the evidence indicates that the petitioner is not a United States citizen and that he is, in fact, subject to deportation by virtue of his status as a convicted felon. The respondent suggested that deportation proceedings were imminent and that there was a strong likelihood of actual physical deportation of the petitioner. However, due to the confidential nature of such proceedings, the respondent was unable to present any adequate documentary proof to support her claims which the petitioner disputes.
The totality of the evidence in this proceeding falls short of *458 presenting the compelling evidence contemplated by Katz v Katz (supra) and later cases. Stated differently, there is not substantial evidence that visitation would be contrary to the welfare of the children herein.
Accordingly, the petitioner shall be entitled to visitation with his children, and, to that extent, his petition is granted. Given the history of the parties and the prior separation, the court finds that visitation should be supervised by a mutually agreeable third person, at least for the first few months of visitation, giving the children a period of time to adjust and acquaint themselves to petitioner. The court, therefore, orders as follows:
The children should be made available by respondent for visitation on alternate weekends either Saturday or Sunday at the option of petitioner for visitation to be supervised by the paternal grandmother, any aunt of the children or any other mutually agreeable adult. The hours of visitation shall be from 10:00 a.m. until 7:00 p.m. for the first three months. Following the three months, supervised visitation shall be alternate weekends, overnight from Saturday, 10:00 a.m., until Sunday, 7:00 p.m., alternate holidays and two weeks in the summer.