OPINION OF THE COURT
Alfred J. Weiner, J.
This proceeding had been referred to the Family Court from the Rockland County Supreme Court by order, dated December 6, 1977, for a determination of temporary custody of the three-year-old child of the parties. It was subsequently stipulated by the parties that the Family Court should determine permanent custody of this child. Fact finding was completed on May 19, 1978.
*448 The parties had married in July, 1973 and their child was born on September 20, 1974. The parties physically separated in April of 1977. Pursuant to an informal agreement between the parties, the child resided with the respondent and petitioner was permitted liberal visitation.
During a regular visit with the child on or about August 26, 1977, petitioner, without the knowledge or consent of the respondent, left the State of New York with the child and went to the State of California, where the parties had resided at one time. At no time did he advise the respondent of his whereabouts, and it was not until late September, 1977, that the respondent finally learned that her husband and child were, in fact, residing in California.
After locating the child, respondent never attempted to visit or contact the child, although not prevented from doing so by the petitioner. As of the date of the completion of the fact-finding hearing, respondent still had not seen the child.
Petitioner continues to reside in California with the child, where he has been steadily employed as a security officer. While petitioner is at work, the child is cared for in a day care center and by petitioner’s mother, who is age 62. Petitioner, his mother and the child appear to live comfortably in a rented home. The child is in good health, and has made a good adjustment to his environment. The petitioner has an understanding of the child’s needs and is doing his best to fulfill them.
The child, prior to removal by the petitioner, resided with the respondent who, since the time of her separation from petitioner, has lived with her mother, two sisters and a niece in a home owned by her mother. If custody of the child is returned to the respondent, she indicated that she would continue to reside with her family. Respondent had been unemployed and was receiving public assistance until she gained employment recently as a locker room attendant.
In determining custody, "the court shall determine solely what is for the best interests of the child, and what will best promote its welfare and happiness”. (Domestic Relations Law, §70.)
Neither parent has a prima facie right to custody of the child (Matter of Wout v Wout, 32 AD2d 709), and "[i]t is the duty of the court to award custody to the parent who, under all the circumstances, can more adequately serve the child’s best interests (People ex rel. Fields v. Kaufmann, 9 A D 2d *449 375, 376) and best protect and preserve the health, welfare, education and well-being of the infant (People ex rel. Fields v. Kaufman, supra, p. 377).” (Matter of Richman v Richman, 32 Misc 2d 1090, 1091.)
"Stability of the child’s environment and a reluctance to uproot him from familiar surroundings, quite properly is a relevant and important consideration where the custody dispute is between parents.” (Foster-Freed, Law and the Family, Vol 2, § 29:5, p 510.)
However, in addition, it has been recognized that if the best interests of all children are to be served, then child snatching to avoid the effect of custody decrees or voluntary agreements must be deterred. (Matter of Nehra v Uhlar, 43 NY2d 242; Uniform Child Custody Jurisdiction Act, L 1977, ch 493.) Accordingly, Matter of Nehra v Uhlar (supra) held that where. both parents are equally fit, and there is no significant evidence that the child would suffer damage should physical custody change from one parent to the other, priority will be accorded to the first custody established by court order, or by voluntary agreement.
The court finds that the petitioner and respondent are both fit parents and that the respondent properly cared for the child while he was in her custody.
The court finds, however, that at the present time, the petitioner is better able to provide the child with a suitable home and environment. The court finds, in light of the relatively short time which the child spent in the respondent’s custody after the parties separated, the child’s total lack of contact with the respondent, and the child’s age, that the petitioner is the exclusive psychological parent of their child. (Goldstein, Freud and Solnit, Beyond the Best Interests of the Child.) The court further finds that it would be in the child’s best interests that a shifting of custody be avoided. (Matter of Barkley v Barkley, 60 AD2d 954.)
"[The] apparent imperative to discourage abduction must, when necessary, be submerged to the paramount concern in all custody matters: the best interest of the child. Otherwise 'the dignity of the several courts would be preserved but the welfare of the children would be destroyed’ (Matter of Lang v Lang, 9 AD2d 401, 405, affd 7 NY2d 1029, supra)” (Matter of Nehra v Uhlar, 43 NY2d 242, 250, supra.)
Accordingly, while the petitioner is to be strongly condemned for wrongfully taking the child and the court has consid *450 ered this conduct as a factor in its decision, the court finds that it is in the best interests of the child that custody be granted to the petitioner at this time.