◼ In the Matter of MATTHEW PARIS, Appellant-Respondent, v KATHERINE PARIS, Respondent-Appellant. — In a proceeding, *inter alia,* for child custody, the father appeals from so much of an order of the Family Court, Kings County (Rand, J.), dated February 10, 1982, as denied his request for custody of the children, suspended visitation and conditioned resumption of visitation on the father obtaining therapy, and ordered that he continue to pay child support, and the mother cross-appeals, as limited by her brief, from so much of said order as dismissed her claim for arrears in child support. Order modified, by deleting the provision which suspended the father's visitation rights. As so modified, order affirmed, insofar as appealed from, without costs or disbursements, and matter remitted to the Family Court, Kings County, for a new hearing and determination as to the father's entitlement to visitation with his children. The hearing, which shall be conducted with all convenient speed, shall be heard before a Judge other than the one who presided at the hearing under review. If it is determined at the hearing that the father is entitled to visitation, the Family Court should set a reasonable visitation schedule. In the interim, the father should be allowed to visit with the children according to the schedule which was set by order of the Family Court, Kings County (Deutsch, J.), entered March 24, 1980. The court did not take the full history of the case into account when it decided that it would be in the best interests of the children to suspend visitation with the father. The record indicates that prior to the time when the mother's boyfriend (Carl Auerbach) moved in with her in 1979, the father fully exercised his right to visit with the children and had a good relationship with them. The mother and Auerbach (both psychologists) were instrumental in setting up situations which caused friction and tension between the father and his children. For example, they arranged it so that the children generally had to give up on some activity which they enjoyed (karate lessons, playing with friends) in order to visit with the father and created an atmosphere of tension and hostility when the father came to their home to call for the children. Furthermore, they told one of the children that she did not have to see her father if she did not want to and Auerbach admitted that on occasion, he had characterized the father in a negative manner to the children. It is quite possible that the above interferences with visitation influenced the children to regard visitation in an unfavorable manner. A review of the record indicates that in evaluating the father's visitation with the children the court did not consider the possible impact of the mother and Auerbach's interferences, despite its finding that they did, in fact, interfere with the father's visitation. Rather, the court relied almost exclusively on the opinions of Dr. Schneider and Dr. Guggenheim that visitation with the father was damaging

to the children's emotional well-being. The testimony of these psychiatrists indicates that they, too, did not take all of the relevant factors into account. Dr. Schneider, for example, never interviewed Auerbach. Also, both psychiatrists diagnosed the father differently. Dr. Schneider diagnosed him as being narcissistic, while Dr. Guggenheim found him to have a paranoid personality. However, the father's fear that Auerbach was assuming his role as the children's father had some basis in fact, according to the record, and thus cannot be characterized as an unfounded delusion of a paranoid mind. Since the record indicates that the court based its determination on the recommendations of the experts and not on a full review of the facts, the court's suspension of visitation must be reversed. It is clear that serious problems exist with regard to the father's exercise of visitation, but since it is impossible to tell from the record before us whether the father's conduct was such as to require the denial of visitation, a new hearing must be held on this issue. In making its determination, the Family Court should take into account all of the facts adduced at the new hearing, including the role which Auerbach played in the disintegration of the relationship between the father and his children. If it is determined at the hearing that the father is entitled to visitation, the Family Court should set a reasonable visitation schedule. It is not clear that the father was the cause of the children's stress. Since a noncustodial parent generally should be granted visitation rights (*Weiss v Weiss,* 52 NY2d 170), he should be afforded visitation pending the new determination; he should be allowed to visit with the children according to the visitation schedule set out in the order of the Family Court, Kings County (Deutsch, J.), entered March 24, 1980. Finally, we note that while the Family Court may order a parent or child to be examined by a psychiatrist and may consider the report before arriving at its judgment in a custody proceeding, the court has no power to compel a party to undergo therapy before considering awarding visitation to that party (*Matter of Grado v Grado,* 44 AD2d 854; *Matter of Freeman v Freeman,* 96 Misc 2d 302). Thompson, J. P., O'Connor and Boyers, JJ., concur.

Weinstein, J., concurs in part and dissents in part, with the following memorandum: Although I concur with the majority that the provision of the order under review which suspended the father's visitation rights should be deleted, I do not see the need for a new hearing and determination as to his entitlement to visitation. In my view, the record supports the granting to the father of his right to visitation with his children. The hearing should thus be limited to determining the extent of visitation. While it is a generally accepted tenet that a parent's right to visitation is always subject to the best interests of the child (*Miriam R. v Arthur D. R.,* 85 AD2d 624), a parent may not be deprived of his or her right to reasonable and meaningful access to the children of the marriage unless evidence has been presented to the court that the exercise of such right is inimical to the children's welfare or the parent has, in some fashion, forfeited his or her right to such access (*Strahl v Strahl,* 66 AD2d 571, affd 49 NY2d 1036). The Court of Appeals has held that: "Visitation is a joint right of the noncustodial parent and of the child * * * This view does not lose sight of the fact that, while legal custody may be in one or both of the parents, the fact that it is placed in one does not necessarily terminate the role of the other *as a psychologial guardian and preceptor* * * * How valuable the mature guiding hand and love of a second parent may be to a child is taught by life itself" (*Weiss v Weiss,* 52 NY2d 170, 175). The record in the instant case is replete with evidence of the uninterrupted and continuous deep feelings of affection of the father for his children. The evidence points not to his unfitness but to the unjustified interference and psychological manipulation of the father/children relationship by the mother and her paramour. As the majority

rightfully notes, the father had fully exercised his visitation rights and had enjoyed a beneficial relationship with his children prior to the mother's having taken up residence with her boyfriend and having contrived to design scenarios intended to create friction between the father and the children. Accordingly, I regard the evidence as insufficient to justify the possible termination of the father's right to visitation and would remit the matter to the Family Court for a hearing solely with respect to setting a reasonable visitation schedule.