OPINION OF THE COURT
Jeffry H. Gallet, J.
Petitioner is the mother of two infant girls. She brings this petition to enforce her visitation rights with her daughters and to modify a judgment of divorce restricting her to supervised visitation in the apartment of her .in-laws.
*908 BACKGROUND
The parties were married in Russia in 1967. Their children, Angela, now 15, and Victoria, now 11, were born before their emigration to the United States in 1978.
In 1980, the respondent father brought an action for custody in the Supreme Court. After trial Justice Joseph Kunzeman found “the possible intention of the [mother] to remove the children from this country”. He issued an order restricting the mother’s visitation to certain specified times in the home of the father’s parents (where the father and the children were living at the time).
On December 4, 1981, the parties entered into a written stipulation agreeing to a judgment of divorce which included the custody and visitation provisions of Justice Kunzeman’s order. On April. 22, 1982, Justice Sidney Leviss entered a judgment of divorce based upon the stipulation and without a trial. The petition sub judice was verified in October of 1982.
FACTS
This court finds several facts, which were, for the most part, undisputed. After the Kunzeman judgment but before the Leviss judgment, the parties reconciled and lived together with their children in one household for a period of several months. When the parties again separated, the older child, Angela, lived primarily with petitioner for a period spanning approximately four months.
Not too long thereafter, petitioner met and began living with Tom F. Tom and petitioner bought a country house in up-State New York and he made petitioner a partner in his roofing business.
Also during this period, the petitioner has testified, that the respondent and his parents interfered with the court-ordered visitation.
After the Leviss judgment, the petitioner and Tom were married and the respondent’s interference with petitioner’s visitation with the children continued.
Throughout the entire period commencing with the Kunzeman judgment and ending with the verification of the instant petition, the petitioner saw the children on the *909 street from time to time without supervision, she knew where they attended school and she held the same job.
The court heard expert pyschological testimony from both a court-appointed psychologist and one called by the petitioner, both of whom opined that a more liberal visitation plan would be in the best interest of the children.
THRESHOLD QUESTIONS
Before dealing with the substantive issue of where the best interests of these children lie, certain procedural questions must be answered. The first is whether the court may consider the substantive issues without first finding a change of circumstances after the Leviss order. The respondent argues that all of the issues before the court were, or could have been, before Leviss and that the petition should be dismissed.
The second, assuming the petition is not dismissed, is what effect the prior orders should have on the fact finding.
DISCUSSION
Matters pertaining to custody have long provided the courts with the most difficult and painstaking task of balancing the needs and rights of both parents and children in an atmosphere plagued by feelings of rage, anger, fear, betrayal and confusion. It is in this context that the court must somehow structure a meaningful and workable arrangement that the parties may now use to restructure their daily lives and activities. Throughout this task one paramount consideration must guide any determination and that is the “best interests” of the child. (Matter of Bennett v Jeffreys, 40 NY2d 543; Matter of Nehra v Uhlar, 43 NY2d 242.)
Visitation, as an aspect of custody, is subject to all the rules and guidelines which have been promulgated for use in determining matters of custody. (McMahon v Thompson, 68 AD2d 68; Matter of Juan R. v Necta V., 55 AD2d 33.) At the forefront of these guidelines again is the best interests of the child. (See, e.g., E.R. v D.T., 77 Misc 2d 242; Matter of Anonymous v Anonymous, 50 Misc 2d 43.) However, in addition, courts must be careful to protect and encourage reasonable visitation not only as a phase of a parent’s right to custody of his child but also as a phase of the developing *910 body of children’s rights.[2] (Weiss v Weiss, 52 NY2d 170; Matter of Doe v Doe, 86 Misc 2d 194; see, also, Matter of Raysor v Stern, 68 AD2d 786; Horner v Horner, 184 Misc 989.)
Where there already exists a court order of visitation, a long line of cases, prior to the Court of Appeals opinion in Friederwitzer v Friederwitzer (55 NY2d 89), have held that modification shall be granted only upon a showing of substantially changed circumstances. (E.g., Matter of Miller v Miller, 74 AD2d 663; De Francesco v MacNary, 74 AD2d 966; Macari v Macari, 50 AD2d 818; Matter of Heller v Bartman, 65 AD2d 876; Schuler v Schuler, 29 AD2d 669; Gross v Kellerman, 62 AD2d 1149; Matter of Lang v Lang, 7 NY2d 1029; Matter of Berlin v Berlin, 21 NY2d 371.)
With the Court of Appeals opinion in Friederwitzer (supra), the requirements pertaining to pleading and proving extraordinary circumstances in change of custody cases were, at the very least, relaxed. The court made clear that “[t]he standard ultimately to be applied remains the best interests of the child when all of the applicable factors are considered, not whether there exists one or more circumstances that can be denominated extraordinary” (supra, at p 95). Further, the court wrote that this “does not mean that a matrimonial court in the Second Department has the authority to change custody simply because change is requested, but that it has the discretion to do so when the totality of circumstances, including the existence of the prior award, warrants its doing so in the best interests of the child” (supra, at p 96).
The Friederwitzer court distinguished the situation where the prior award resulted from the Trial Judge’s judgment after a consideration of all of the relevant evidence from the circumstance where the award finds its way into the judgment through agreement of the parties made during a proceeding in which custody was not contested and no evidence was submitted to the contrary. The court *911 explained that more weight must necessarily be given to the former. Accordingly, “[n]o agreement of the parties can bind the court to a disposition other than that which a weighing of all of the factors involved shows to be in the child’s best interest” (supra, p 95). However, this should not be interpreted to mean that the court intended to impose a stricter burden prior to the modification of a court order of visitation than the one already articulated, rather, “[extraordinary circumstances are not a sine qua non of a change in parental custody of a child, whether the original award of custody is made after plenary trial or by adoption of the agreement of the parties” and that in either circumstance the ultimate standard is the child’s best interests (supra, at p 90).
Courts which have been faced with the issue subsequent to Friederwitzer (supra) have gone as far as to state that Friederwitzer rejects any absolute requirement of proof of extraordinary circumstances in change of custody cases. (E.g., Matter of Bonnaci v Bonnaci, 89 AD2d 634.) In any event, this court is convinced that it need no longer find some particular, sudden or unusual event which has occurred since the prior award before that prior order may be modified.
It is therefore unnecessary for this court to find that some fundamental change has occurred since the date of either the Kunzeman or Leviss order although a careful consideration of the circumstances of the instant case, including the petitioner’s remarriage, may well support such a finding. That is not to say that some change need not be found. Friederwitzer (supra) does not hold that a noncustodial parent, at his or her whim, may trigger a full evidentiary hearing on a child’s best interests, without regard to a prior decision, merely by filing a petition. It is still necessary to prove a change of circumstances to reopen the best interests question. However, the change need not, by itself, constitute grounds for a change in the custodial or visitation arrangements. Rather, it need only be sufficient to induce the court to look at the totality of circumstances.
THRESHOLD FINDING
In an appropriate case, even the passage of time alone might be a sufficient change. After all, an infant has *912 different needs from those of an adolescent. Or, as in this case, the possibility that the children will be spirited from the jurisdiction may decrease with time. However, the facts of this case do not require that a ruling on that question alone be made.
The passage of time, taken together with the petitioner’s remarriage after the Leviss order and the subsequent difficulties with the existing visitation arrangement are sufficient to reopen the best interests question. The argument that petitioner and Tom were living together prior to the Leviss order and that the marriage created no change of circumstance is rejected. Living together in an affectionate relationship is not the equivalent of being married. (Hudson View Props. v Weiss, 59 NY2d 733.)
The court may hear testimony of an incident which occurred prior to the Kunzeman order to obtain a better understanding of the family situation, however, it is bound by Kunzeman’s findings of fact. Since Leviss’ order was based on a stipulation between the parties, there are no findings to bind the court.
Accordingly, in ruling on the petitioner’s request for increased and unsupervised visitation, the totality of the circumstances will be considered.
VISITATION
In examining the visitation questions, we must note the importance placed by courts of this State on meaningful, frequent and regular visitation. (Weiss v Weiss, supra; Daghir v Daghir, 82 AD2d 191, affd 56 NY2d 938.)
In Daghir (supra) the Appellate Division, in an opinion affirmed by the Court of Appeals, amplified the area by providing that: “ ‘a parent may not be deprived of his or her right to reasonable and meaningful access to the children by the marriage unless exceptional circumstances have been presented to the court. The term “exceptional circumstances” or “exceptional reasons” is invariably associated with a situation where either the exercise of such right is inimical to the welfare of the children or the parent has in some manner forfeited his or her right to such access’ ”. (82 AD2d, at p 194; see, also, Matter of Becker v Becker, 75 AD2d 814.)
*913 Further, the court went on to state (p 194) that: “Indeed, so jealously do the courts guard the relationship between a noncustodial parent and his child that any interference with it by the custodial parent has been said to be ‘an act so inconsistent with the best interests of the children as to; per se, raise a strong probability that the [offending party] is unfit to act as custodial parent.’ ” (Entwistle v Entwistle, 61 AD2d 380, 384-385, app dsmd 44 NY2d 851.)
It is the opinion of this court, upon the facts of the instant case, that no such exceptional reasons exist at the present time which would support anything less than reasonable, regular and meaningful visitation between the petitioner and her daughters, and that the best interests of the children require expanded visitation. In arriving at this determination the court has considered numerous factors including but not limited to the likelihood of abduction during unsupervised visitation by-the petitioner, the desires of the children, the fitness of petitioner, the length of time during which the parties lived under the prior order and, of course, the existence of the prior order.
This court is convinced that, while the possibility of abduction cannot be predicted with absolute certainty, the risk here seems sufficiently miniscule so as not to negatively influence the court’s determination. There was no evidence of a continued intent on the part of petitioner to remove the children to Russia. On the contrary, evidence adduced at trial has pointed to a substantial increase in petitioner’s ties to this country, as evidenced by her marriage to Tom F., their purchase of real estate and her partnership in their joint business. Further, the petitioner has had opportunities to effect a forcible kidnapping, and her failure to do so negates the claim that she still plans an abduction. Further, the imperative to discourage abduction, as with other facts, must when necessary be submerged to the paramount concern, the best interests of the children. (Matter of Golden v Golden, 95 Misc 2d 447.)
With respect to the desire of the children regarding increased visitation, the rule in this jurisdiction is that the wishes and/or the apparent indifference of the children may be considered, but will not be controlling. (Matter of *914 Margaret B. v Jeffrey B., 106 Misc 2d 608; Matter of De Biase v Scheinberg, 47 AD2d 657.)
In the case at bar, the children have openly expressed a reluctance to visit with their mother under circumstances different in form from that which already exists but they have expressed a desire to continue visitation. Critical in determining the weight to be given to their wishes is a determination as to the validity and depth of their feelings considering the potential for influence having been exerted on the children and whether the effectuation of the wishes will best serve their welfare. (See, e.g., Obey v Degling, 37 NY2d 768; Bistany v Bistany, 66 AD2d 1026; Eschbach v Eschbach, 56 NY2d 167; Matter of Lincoln v Lincoln, 24 NY2d 270.) The apparent unwillingness of the girls to participate in increased visitation, however, stems primarily from their fear of abduction, a possibility which this court has already found to be inconsequential. Accordingly, their expressed wishes must be balanced against what the court, after a lengthy hearing, finds to be the state of the facts.
From a consideration of all the foregoing and the lack of any showing of the petitioner’s unfitness, the court is convinced that the best interests of the children will be served by expanded and unsupervised visitation. A gradual and systemized introduction of the parties to a more extensive plan of visitation will provide the children with the opportunity to be exposed to and benefit from the guidance and support of both parents.
THE PLAN FOR IMPLEMENTATION
In fashioning a plan for expanded visitation, the court must be cognizant of and sensitive to the marked departure unsupervised visitation will bring to the lives of the children and their parents. The recommendation of both expert psychological witnesses is for therapy to be included as a fundamental part of the court’s expanded visitation plan. The court agrees.
In the court’s attempt to promote the best interests of the children, section 251 of the Family Court Act provides it with the discretion to, under proper circumstances, provide for examination or counseling by a physician, psychiatrist *915 or psychologist. (See McMahon v Thompson, 68 AD2d 68; Anonymous v Anonymous, 34 AD2d 942.) However, this court has no power to compel the parties to undergo therapy treatments before entering an award of visitation. (Matter of Paris v Paris, 95 AD2d 857; Matter of Grado v Grado, 44 AD2d 854.) The court can, however, order psychotherapy as a component of a custody order in an appropriate case. (Matter of Doe v Doe, supra; Haghani v Haghani, 44 AD2d 818.)
Accordingly, unsupervised visitation away from respondent’s parents’ home is ordered as follows:
(1) every other Saturday afternoon commencing August 13, and extending through September 24, 1983 from noon until 5:00 p.m.;
(2) commencing with October 1 and extending through November 5, 1983, every Saturday from 9:00 a.m. to 5:00 p.m.; and
(3) on November 12,1983 visitation shall be expanded to every other weekend from 9:00 a.m. Saturday to 5:00 p.m. Sunday.
As a component of, and not a condition for, visitation the court orders all parties, petitioner, respondent, Angela and Victoria, to commence therapy with a licensed psychiatrist or psychologist for the purpose of helping to adjust to the visitation order of this court. The frequency and duration of such sessions to be set by the therapist, who shall consider the financial burden placed on the petitioner in making any determination, which determination shall be subject to review by the court.
Upon mutual agreement of the parties to the selection of a therapist this court shall be notified of his or her name and address. If the parties fail to agree on or before August 29, 1983 and so notify this court, the court will entertain recommendations and make the selection.
Visitation will proceed upon the timetable established but may later be modified upon the recommendation of the therapist and with the approval of this court.
The cost of the therapy shall be the exclusive responsibility of the petitioner. All of the costs of the support of the children are currently being paid by respondent. Howéver, *916 petitioner testified that she was a partner in a roofing business as well as holding a full-time job. Accordingly, it is reasonable to place the financial burden on petitioner not as a price for her visitation but as an equitable distribution of the financial burdens of parenthood.
The parties are directed to contact the court no later than August 29, 1983 with the name of the psychiatrist or psychologist.

. Social science researchers, in addition to members of the legal profession, have found that continued access to both parents is best. Their research has confirmed that lack of access to the absent parent is correlated with negative effects on the child. Similarly they’ve found a positive relationship between a child's self-esteem and continued contact with the noncustodial parent; the greater the contact, the higher the sense of self-esteem. (Clawar, One House, Two Cars, Three Kids, 5 [No. 21 Family Advocate 15.)