■ Martin J. Resnick, Appellant-Respondent, v Barbara Zoldan, Also Known as Barbara Resnick, Respondent-Appellant. (Action No. 1.) Barbara Zoldan, Also Known as Barbara Resnick, Respondent, v Martin J. Resnick, Appellant. (Action No. 2.)—Appeals by Martin J. Resnick (hereafter the father) from (1) an order of the Supreme Court, Westchester County (Rubenfeld, J.), entered July 3, 1986, which denied his

application, *inter alia,* to restrain Barbara (Resnick) Zoldan (hereinafter the mother) from allegedly interfering with the father's visitation rights with the parties' daughter, and (2) from an order of the same court (Martin, J.), entered October 17, 1986, which, *inter alia,* awarded the mother a money judgment in the amount of $22,923.31 as and for child support arrears, awarded her $3,500 in counsel fees, and denied the father's cross application to direct reasonable visitation with the parties' child. The mother cross-appeals from so much of the same order entered July 3, 1986, as failed to award her certain moneys held in escrow pursuant to a stipulation of the parties.

Ordered that the order entered July 3, 1986, is reversed, on the law and the facts, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for further proceedings consistent herewith; and it is further,

Ordered that the order entered October 17, 1986, is affirmed, without costs or disbursements.

Contrary to the mother's present contention, the court acted properly in denying her motion to dismiss the father's application under the rule of *Baker v Baker* (66 NY2d 649), as the application was properly brought on pursuant to Domestic Relations Law § 240 by order to show cause, and, in any event, the original judgment of divorce specifically provides for visitation *(cf., Sileo v Sileo,* 115 AD2d 535).

However, while we agree with the court's determination that the mother did not actively interfere with or deny visitation, we conclude that the court should have ordered the parties and their daughter to undergo a program of psychiatric counseling under the court's direction and supervision in an effort to attempt a gradual resumption of visitation *(see generally, Bubbins v Bubbins,* 114 AD2d 346; *Matter of Wostl v Wostl,* 75 AD2d 1013, *appeal dismissed* 52 NY2d 787). The natural right of visitation jointly enjoyed by the noncustodial parent and the child is more precious than any property right *(see, Biamby v Biamby,* 114 AD2d 830), and it may not be denied absent a showing that visitation would be inimical to the child's welfare *(see, Kozak v Kozak,* 111 AD2d 842, *appeal dismissed* 66 NY2d 913; *Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938). There is no evidence in the instant record that the father is an abusive or unfit parent, and it appears that the child's reluctance to visit with him has resulted from the combined effects of her confusion regarding the roles of her natural father and her stepfather, her mother's failure to affirmatively encourage visitation, and the combative relation-

ship between her parents which has occasionally manifested itself in inappropriate remarks made by the natural father to the child. While the child's feelings and attitudes are no doubt relevant *(see generally, Matter of Lincoln v Lincoln,* 24 NY2d 270), they are not determinative of the visitation issue *(see, Matter of Ebert v Ebert,* 38 NY2d 700; *Obey v Degling,* 37 NY2d 768). The record reveals that no true psychiatric counseling occurred in this case, as the mother and the child attended only two diagnostic sessions with the court-appointed psychiatrist and no counseling was involved. Moreover, the psychiatrist found the child to be psychologically confused and troubled, and he therefore recommended therapy. In our view, adherence to this recommendation will serve the child's best interests; hence, we remit the matter so that the court may arrange and supervise the therapy and future visitation.

Moreover, upon remittitur, the court should determine the disposition of the moneys for the child's camp and orthodontic expenses which are presently being held in escrow pursuant to a stipulation of the parties, as the instant record fails to clearly indicate whether and to what extent the mother failed to cooperate with psychiatric evaluation and the degree, if any, to which her alleged lack of cooperation hindered the preparation of that evaluation for the court. Additionally, while we find no evidence of bias or misconduct on the part of the guardian ad litem in this case, we conclude that, upon remittitur, if the court deems the appointment of a guardian to be necessary, a new guardian should be appointed as the present guardian's personal and professional relationship with the child's stepfather could give rise to a potential appearance of impropriety or conflict of interest.

We reject the father's challenge to the award of child support arrears and counsel fees to the mother. The record reveals that the father unilaterally withheld child support payments due to his daughter's refusal to visit with him. This was an improper reason for the failure to pay support *(see, e.g., Miller v Miller,* 117 AD2d 719). Similarly, we reject the father's claim that the nonpayment of support was justified by the mother's actions, as her neutral position with regard to visitation did not rise to the level of active interference with or denial of the father's rights. Finally, the award of counsel fees to the mother in her enforcement application pursuant to Domestic Relations Law § 244 was proper *(see,* Domestic Relations Law § 237 [c]). Niehoff, J. P., Weinstein, Kunzeman and Spatt, JJ., concur.