OPINION OF THE COURT
Ruth Jane Zuckerman, J.
The narrow issue before the court in this visitation proceeding is whether, in conjunction with a visitation order, the court has the power to order psychotherapy or counseling for an 11-year-old child who is vehemently opposed to unsupervised visitation with her father. For the reasons set forth below, the court has determined that where, as here, unsupervised visitation with the father ultimately is in the child’s best interest, but the child through no fault of the father’s is strongly opposed to such visitation, the Family Court is authorized, in the best interests of the child, to order counseling or therapy or both for the child, as well as her parents, in order to facilitate the occurrence of meaningful unsupervised visitation and to reduce the stress and other short-term adverse *93 effects such unsupervised visitation may, for a time, have upon the child.
THE FACTUAL BACKGROUND
In July of 1987, Carl P. (hereinafter petitioner) filed petitions under article 6 of the Family Court Act against his wife, Mary P. (hereinafter respondent), seeking an order of visitation with the three children of the parties’ marriage, Renata P. (age 11), Edward P. (age 6), and Robert P. (age 3). Respondent opposed such visitation, unless it was held under the supervision of her mother, claiming that petitioner was a violent individual and that he had, in addition, made sexual advances to their daughter Renata. Petitioner vehemently denied these allegations.
When it became clear that the major area of dispute between petitioner and respondent concerned petitioner’s alleged sexual misconduct vis-á-vis the child Renata, the court assigned the New York Society for the Prevention of Cruelty to Children (hereinafter NYSPCC) as guardian ad litem for all the children, ordered evaluations by the court’s Mental Health Service of petitioner, respondent, the child Renata, and, with her consent, the paternal grandmother, with whom petitioner had been living since the parties’ separation in July of 1987.[1] In addition, an investigation and report by NYSPCC was ordered. Finally, the court entered a temporary order of visitation pursuant to which petitioner was granted supervised visitation with all three children.
A contested hearing as to visitation was held before the undersigned on January 26 and 28, 1988, in the course of which petitioner testified, as did Arthur F. Milone, M.D., the psychiatrist who conducted clinical evaluations of both parties and of Renata; Robert Guglielmo, Ph. D., the psychologist who did additional evaluations of the parties and the child; and Ann Marie Gatti, a peace officer employed by NYSPCC, who prepared the court-ordered investigation and report. A number of exhibits were also introduced in evidence, including the clinical and psychological evaluations prepared by the court’s Mental Health Service and the investigation and report prepared by NYSPCC. Finally, the child Renata was interviewed in the robing room, on the record, by the court, in the presence of her guardian ad litem. In it oral decision, ren *94 dered on the record in open court on January 29, 1988, the court specifically found, based on the evidence adduced at trial, that there was absolutely no credible evidence to support respondent’s allegations that petitioner has made sexual advances to Renata or otherwise sexually abused her, and that the respondent’s and the child’s statements regarding these alleged incidents were without any factual basis. The court also found that the child’s fears relating to unsupervised visitation with the father, while real, were without any basis in fact; that the child, despite her expressed fears, enjoyed spending time with her father; and that it was by reason of respondent’s psychologically distorted views, as conveyed to Renata, that the child entertained irrational fears of her father and mistook ordinary paternal affection for improper conduct by petitioner. The court further found that petitioner had shown patience and understanding in his efforts to obtain unsupervised visitation with the children, and that he had been remarkably empathic with respect to Renata’s concerns and fears.
Mindful of Renata’s fears, however unreasonably based, the court determined that at least for a time, she should not be forced to spend time alone with her father during visitation, but that there was no reason to deny petitioner’s application for unsupervised visitation with his sons. Accordingly, in an effort to ease the transition from supervised to unsupervised visitation between petitioner and the child Renata, while at the same time minimizing the apparent distinctions drawn, with respect to visitation, between Renata and her brothers, the court entered a final order of visitation which provided for daytime visitation each Saturday between petitioner and all three children at the paternal grandmother’s home. In addition, the court ordered that on alternate Sundays, the father have unsupervised visitation with his sons, from 10:00 a.m. to 2:00 p.m. followed by visits with all three children at the maternal grandmother’s home from 2:00 p.m. to 6:00 p.m. Finally, in light of the unequivocal recommendation of the mental health professionals who had evaluated the parties and the child Renata, in which recommendation NYSPCC concurred, that petitioner be granted liberal visitation but that, because of the stress it might create for Renata, such visitation should be gradually instituted, and that Renata should be enrolled in psychotherapy because of the anticipated pressure that her mother would exert upon her if this recommendation were implemented, the court, at the time it ren *95 dered its decision, inquired as to the respondent’s willingness to consent to psychotherapy for the child. When respondent, in response to this inquiry, made clear her unwillingness to cooperate with the clinic’s recommendations as to psychotherapy for Renata, the court, on its own motion, directed that counsel and the guardian ad litem prepare memoranda of law on the question of the court’s power, over respondent’s objection, to order such psychotherapy, and deferred its decision regarding such court-ordered therapy. In addition, the court directed that the guardian ad litem submit a report on March 31, 1988, as to the progress of visitation as provided for in the court’s final order of visitation.
On March 31, 1988, a report was submitted by NYSPCC as to the progress of the visitation, and although some resistance by respondent was noted, the child herself reported no problems with the arrangements as ordered by the court.
THE APPLICABLE LEGAL PRINCIPLES
In analyzing the question of whether the court has the power to order psychotherapy for a child in an effort to alleviate the child’s unwarranted fear of unsupervised visitation, the logical starting point is the case law on visitation in general.
Initially it should be noted that both the Court of Appeals and the intermediate appellate courts of this State have made clear that a high value, from both a child’s and a noncustodial parent’s point of view, is placed upon unimpeded, meaningful visitation between the noncustodial parent and his or her children. (See, e.g., Weiss v Weiss, 52 NY2d 170 [1981]; Daghir v Daghir, 82 AD2d 191 [2d Dept 1981], affd 56 NY2d 938 [1982]; Entwistle v Entwistle, 61 AD2d 380 [2d Dept], appeal dismissed 44 NY2d 851 [1978].) Indeed, it often has been declared that interference by a custodial parent with the relationship between the child and the noncustodial parent may be so inconsistent with the child’s best interests as to "raise a strong probability that the [offending party] is unfit to act as custodial parent.” (Entwistle v Entwistle, 61 AD2d, supra, at 384-385; see also, Leistner v Leistner, 137 AD2d 499 [2d Dept 1988]; Daghir v Daghir, supra.) It is also clear that the overriding concern in visitation as well as in custody disputes is thé best interests of the child. (See, e.g., Matter of McGreevy v McGreevy, 92 AD2d 1077 [3d Dept 1983]; Matter of Larisa F. v Michael S., 120 Misc 2d 907 [Family Ct, Queens County 1983].)
*96 Frequently, as an aid to the determination of the child’s best interests in custody and visitation disputes, the Family Court will order mental health evaluations of the parties and the children. It is, of course, well settled, pursuant to Family Court Act § 251, that where a petition has been properly filed in the Family Court "the court may cause any person within its jurisdiction and the parent or other person legally responsible for the care of any child within its jurisdiction to be examined by a physician, psychiatrist or psychologist appointed or designated for the purpose by the court when such an examination will serve the purposes of this act”. However, while the above-quoted language provides clear authorization for court-ordered mental health studies in custody and visitation proceedings brought under article 6 of the Family Court Act, as well as in a variety of other matters over which the court has jurisdiction, section 251 does not authorize the court to enter orders implementing the recommendations made by the mental health professionals who conducted such evaluations.[2] The problem that thus arises, as is seen in the instant case, is how to effectuate the child’s best interests in having a substantial and meaningful relationship with the noncustodial parent where the child either adamantly refuses any visitation or is resistant to visitation except under supervision, and the basis for the child’s resistance is unrelated to misconduct by the noncustodial parent. Faced with this situation, the mental health professionals who, at the court’s direction, have evaluated the parties and the child, often find, as in the case at bar, that expanded visitation, without supervision, is in the child’s best interests, but recommend counseling and therapy for the child, and perhaps, for the parents as well, in order to ease the child’s path by minimizing the stress such liberalized visitation initially may cause.
Despite the frequency with which recommendations of the sort just described are made by mental health professionals, there are very few reported decisions involving court-ordered mental health treatment for parents or children or both, in the context of custody and visitation proceedings. Certain guidelines have, however, emerged in this area. Thus, it is clear that in a visitation proceeding brought under article 6 of the Family Court Act, "the court has no power to compel a party to undergo therapy before considering awarding visitation to that party”. (Matter of Paris v Paris, 95 AD2d 857, 858 *97 [2d Dept 1983].) On the other hand, there are a few reported decisions at the intermediate appellate level, as well as the trial level, in which a court’s power to order counseling and therapy in connection with visitation and custody orders has been recognized, irrespective of whether the problems of visitation are attributable to the custodial parent’s interference. For example, in Resnick v Zoldan (134 AD2d 246, 247-248 [2d Dept 1987]), on appeal from the trial court’s denial of the noncustodial parent’s application to restrain the custodial parent from her alleged interference with the father’s visitation, the Appellate Division, in reversing the trial court wrote: "[W]hile we agree with the [trial] court’s determination that the mother did not actively interfere with or deny visitation, we conclude that the court should have ordered the parties and their daughter to undergo a program of psychiatric counseling under the court’s direction and supervision in an effort to attempt a gradual resumption of visitation * * *. There is no evidence in the instant record that the father is an abusive or unfit parent, and it appears that the child’s reluctance to visit with him has resulted from the combined effects of her confusion regarding the roles of her natural father and her stepfather, her mother’s failure to affirmatively encourage visitation, and the combative relationship between her parents which has occasionally manifested itself in appropriate remarks made by the natural father to the child. While the child’s feelings and attitudes are no doubt relevant * * * they are not determinative of the visitation issue * * *. The record reveals that no true psychiatric counseling occurred in this case, as the mother and the child attended only two diagnostic sessions with the court-appointed psychiatrist and no counseling was involved. Moreover, the psychiatrist found the child to be psychologically confused and troubled, and he therefore recommended therapy. In our view, adherence to this recommendation will serve the child’s best interests; hence, we remit the matter so that court may arrange and supervise the therapy and future visitation.” (Emphasis added.)
Approval for a trial court’s order for counseling in connection with visitation was also expressed, albeit in a somewhat different context, in Wolfson v Minerbo (108 AD2d 682 [1st Dept 1985]). In that case, the father had filed a visitation petition in Family Court after his children, who had witnessed a violent altercation between their parents, refused to see him. In the trial court’s view, the children’s refusal to see their father might well have resulted from brainwashing by *98 the mother; accordingly, the court directed that the parents as well as the children attend counseling with a specified agency, and provided that if the mother failed either to cooperate with the counseling or to bring the children for counseling, support payments would be terminated. Following a number of abortive efforts at counseling, the father sought termination of support payments, claiming the mother had failed to cooperate. At the conclusion of the hearing on the father’s petition to terminate support, the court denied the latter, and the father appealed. In its memorandum decision, the Appellate Division modified the order of dismissal on the law and the facts and in the exercise of discretion to direct resumption of counseling. In this connection, the appellate court wrote: "It is obvious from the record that, at this time, neither party has sought to participate with a view to offering the counseling process a chance of success. Though facially the mother has appeared to cooperate, it is apparent that she has done so solely for the purpose of continuing her right to child support. The father is, equally obviously, seeking to use counseling as a means of terminating his obligation to support. In sum, the entire process thus far has been a charade. In these circumstances, we think it appropriate to insist that there be a meaningful effort by both parties to participate in the counseling process so that a reasonable relationship can be reestablished between father and children.” (108 AD2d, supra, at 684.)
Similarly, in Matter of Larisa .F v Michael S. (supra), the court, faced with the children’s reluctance to visit their mother other than under the supervision and in the home of their paternal grandparents, determined that the children’s wishes were based on their fear of abduction, a possibility which the court found inconsequential; that there was no showing of unfitness on the part of the noncustodial parent; and that a more liberal visitation plan was in the children’s best interests. Mindful of the decision in Matter of Paris v Paris (supra), the court in Larisa F. made clear that it was ordering psychotherapy "[a]s a component of, and not a condition for, visitation” (120 Misc 2d, supra, at 915), and ordered that the parents as well as the children attend therapy in order to aid in adjustment to the court’s order providing for unsupervised visitation on a gradually expanding basis.
In the case at bar, the mental health professionals who evaluated the parties and the child are unequivocal in their recommendations for more liberal visitation, with therapy for *99 the child as an adjunct and aid to the change from supervised to unsupervised visitation. In this circumstance, it is clear that respondent’s refusal to consent to therapy for Renata is contrary to the child’s best interests. Moreover, although the child’s wishes are for supervised visitation — and only supervised visitation — to take place, these wishes, while entitled to consideration, cannot be determinative, where, as here, they are reflective of respondent’s distorted views and, if honored, would not serve the child’s best interest. (See, e.g., Obey v Degling, 37 NY2d 768 [1975]; Matter of Larisa F. v Michael S., supra.)
Having determined that this court has the power to order psychotherapy and counseling in order to promote the child Renata’s best interests and as a necessary component of a plan for gradual expansion and liberalization of petitioner’s visitation with Renata, the court’s final order of visitation, as entered on January 29, 1988, is modified so as to include a direction that counsel for the parties as well as child’s guardian ad litem, in consultation with the parties, select a qualified mental health professional or service who or which can provide not only individual therapy for Renata, but also, if appropriate, counseling and family therapy for petitioner and respondent. The parties are further directed to cooperate with the counseling program for Renata and for themselves as formulated by such mental health professional or service provider. The court is to be notified by October 31, 1988 of the therapist or counseling service selected. In the event that the parties, counsel and the guardian ad litem are unable to agree as to this matter, they are directed to appear before the court on October 31, 1988 in the Assignment Part in order that the court may, if necessary, assist in the selection of the therapist or counseling service. The guardian ad litem is to monitor the progress of the therapy, and is to submit a progress report to the court, with a copy to all counsel, on December 15, 1988.

. At the request of the court’s Mental Health Clinic, additional psychological evaluations were ordered on the parties and Renata.

. But see, McMahon v Thompson, 68 AD2d 86 (3d Dept 1979).