■ MICHAEL ZAFRAN, Appellant, v LISA ZAFRAN, Respondent. [814 NYS2d 669]—

In an action for a divorce and ancillary relief, the father appeals, as limited by his brief, from so much of an order of the Supreme Court, Nassau County (Ross, J.), dated February 4,

2005, as, upon the mother's motion, inter alia, to suspend all visitation between the father and the parties' daughter, terminated all visitation and contact between him and the parties' daughter.

Ordered that the order is reversed insofar as appealed from, on the law and as a matter of discretion, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith; and it is further,

Ordered that all visitation between the father and the parties' daughter is suspended pending further order of the Supreme Court, Nassau County.

In an order dated October 9, 2002 affirmed by this Court (*see Zafran v Zafran*, 306 AD2d 468 [2003]), the Supreme Court awarded custody of the parties' daughter to the defendant mother, based on a finding that the plaintiff father was responsible for alienating the parties' two sons from the mother. The order dated October 9, 2002 also implemented a case management plan, mandating family therapy conducted by a court-appointed mental health professional to serve as case manager, and awarded the father temporary visitation with the daughter, supervised by the case manager, pending the court's final determination on the issue of visitation, which was the subject of a hearing beginning on February 24, 2004. At the hearing, it became apparent that the father had failed to cooperate with the court-ordered case management plan, which was designed to modify his alienating behavior so that he could resume unsupervised visitation with the daughter. The father had sought to manipulate the process to his advantage by, inter alia, surreptitiously tape recording his therapy sessions with the case manager. Not only did the father make no progress in modifying his alienating behavior, but his inappropriate conduct and bad faith undermined the court's efforts to facilitate unsupervised visitation between the father and the daughter as well as a possible reconciliation between the mother and the sons.

The visitation hearing was suspended to permit the court and the parties to address the issues presented by the father's secret taping. As a final step before resuming and completing the hearing, the Supreme Court, in an order dated July 16, 2004, directed the father to submit to a psychiatric evaluation, to "update the [c]ourt's forensics in this matter so that the visitation herein could be facilitated." The father did not undergo a psychiatric evaluation and stated through counsel in open court that he had no intention of submitting to a psychiatric evalua-

tion or participating in the case management plan. The mother then moved, inter alia, to hold the father in contempt for failing to comply with the orders dated October 9, 2002 and July 16, 2004, and to suspend all visitation between the father and daughter pending further order of the Supreme Court. In an order dated February 4, 2005 the Supreme Court denied the relief requested by the mother, and instead terminated all visitation and contact between the father and the daughter. The father appeals from so much of the order as terminated visitation and contact with the daughter.

As a general rule, some form of visitation by the noncustodial parent is always appropriate, "absent exceptional circumstances, such as those in which it would be inimical to the welfare of the child or where a parent in some manner has forfeited his or her right to such access" (*Weiss v Weiss*, 52 NY2d 170, 175 [1981]). Parental alienation of a child from the other parent is an act inconsistent with the best interest of the child (*see Bobinski v Bobinski*, 9 AD3d 441 [2004]; *Stern v Stern*, 304 AD2d 649 [2003]), and in this case, the Supreme Court reasonably perceived a risk that the father would alienate the parties' daughter from the mother as he had done with the parties' sons. Moreover, by refusing to cooperate with the court-ordered case management plan, the father arguably forfeited his visitation rights.

Nonetheless, we do not agree that termination of visitation and contact between the father and the daughter was the appropriate response to the father's recalcitrance. We are especially mindful that "[v]isitation is a joint right of the noncustodial parent and of the child" (*Weiss v Weiss, supra* at 175) and that "[i]t is generally in the best interest of the child for a rapport to be established with the noncustodial parent" (*Matter of Schack v Schack*, 98 AD2d 802, 802 [1983]). The record before us does not convince us that the result reached by the Supreme Court, which has the effect of terminating the daughter's relationship with her father, is in the daughter's best interest.

We note that the Supreme Court, having terminated all visitation and contact between the father and the daughter, failed to grant that branch of the mother's motion which was to hold the father in contempt for failing to comply with the orders dated October 9, 2002 and July 16, 2004. In light of our determination, it would be appropriate for the Supreme Court to revisit the issue of contempt, either in the context of a renewed motion by the mother or on its own motion. Since the daughter's interests, and not just those of the father, are at stake, the father's refusal to cooperate with the Supreme Court's case

management plan, including his express, open-court statements that he had no intention of complying with the court's orders, cannot be tolerated.

At various points in the proceedings, the father has attempted to justify his defiance of court orders by arguing that those orders had the impermissible effect of conditioning his right to apply for visitation with the daughter upon his participation in therapy (*see Matter of Grassi v Grassi*, 28 AD3d 482 [2006]; *Pudalov v Pudalov*, 308 AD2d 524, 525-26 [2003]; *Matter of DeJesus v Tinoco*, 267 AD2d 308, 309 [1999]; *Matter of Tucker v Tucker*, 249 AD2d 643, 645 [1998]; *Matter of Tito G. v Thelma G.*, 187 AD2d 651, 652 [1992]; *Jones v Jones*, 185 AD2d 228, 230 [1992]; *Nacson v Nacson*, 166 AD2d 510, 511 [1990]; *Schneider v Schneider*, 127 AD2d 491, 495 [1987], *affd sub nom. Paul B. S. v Pamela J. S.*, 70 NY2d 739 [1987]; *Matter of Paris v Paris*, 95 AD2d 857, 858 [1983]; *Matter of Grado v Grado*, 44 AD2d 854 [1974]). The father is wrong. First, the orderly administration of justice depends upon the principle that a party is not entitled to challenge the legality of a court order by disobeying it, but must instead resort to the appellate process (*see Maness v Meyers*, 419 US 449, 458-460 [1975]; *Matter of Balter v Regan*, 63 NY2d 630 [1984], *cert denied* 469 US 934 [1984]; *Ketchum v Edwards*, 153 NY 534, 538-539 [1897]; *Skripek v Skripek*, 239 AD2d 488 [1997]; *Sprecher v Port Washington Union Free School Dist.*, 166 AD2d 700, 701 [1990]). Second, the father did, in fact, appeal from the order dated October 9, 2002 which set forth the case management plan, and in affirming that order, this Court concluded that "since the father's right to visitation was not made contingent on his participation in therapy, there is no improper interference with his rights to visitation" (*Zafran v Zafran, supra* at 470). The Supreme Court's subsequent order dated July 16, 2004 directed the father to submit to a psychiatric evaluation in order to "update the [c]ourt's forensics" and, thus, facilitate the court's ultimate determination of the visitation issue, a measure which clearly does not constitute an impermissible requirement of participation in therapy as a condition to applying for visitation (*see* Family Ct Act § 251; *Matter of Alex LL. v Albany County Dept. of Social Servs.*, 270 AD2d 523, 527 [2000]; *Matter of Tito G. v Thelma G., supra; Schneider v Schneider, supra* at 495; *Bubbins v Bubbins*, 114 AD2d 346, 348 [1985]; *Matter of Paris v Paris, supra; Grado v Grado, supra; Matter of Freeman v Freeman*, 96 Misc 2d 302 [1978]).

The father's compliance with the Supreme Court's orders will be necessary to enable the Supreme Court to complete the visita-

tion hearing. Depending upon the outcome of that hearing and the extent to which the father demonstrates the capacity and willingness to act cooperatively for the benefit of his daughter, the Supreme Court, in its discretion, may lift the suspension of the father's visitation with the daughter and award any type and degree of visitation that may be appropriate (*cf. Matter of Sitzer v Fay*, 27 AD3d 566 [2006]).

Contrary to the father's anticipated argument, the foregoing statement does not reflect an improper condition, requiring the father to participate in therapy before being permitted to apply, or reapply, for visitation with the daughter. In this case, the father was permitted to apply for a temporary order of visitation (no final visitation determination has been made) without any requirement that he participate in therapy. The therapy requirement was imposed as a component of the court-ordered program of temporary visitation, which is perfectly permissible (*see Matter of Grassi v Grassi, supra; Matter of Williams v O'Toole*, 4 AD3d 371, 372 [2004]; *Gadomski v Gadomski*, 256 AD2d 675, 677 [1998]; *Matter of Mongiardo v Mongiardo*, 232 AD2d 741, 743 [1996]; *Landau v Landau*, 214 AD2d 541, 542 [1995]; *Matter of Sweet v Passno*, 206 AD2d 639 [1994]; *Matter of Adam H.*, 195 AD2d 1074, 1075 [1993]; *Matter of Jones v Jones*, 190 AD2d 1076 [1993]; *Ramshaw v Ramshaw*, 186 AD2d 243, 244 [1992]; *Resnick v Zoldan*, 134 AD2d 246 [1987]). Because the therapy requirement was already properly in place, insisting that the father comply with that requirement does not impose a condition to an application for visitation. Any other rule would leave the Supreme Court powerless to enforce its legitimate directive that the father participate in therapy as part of a visitation program; the father would be entitled to violate the therapy requirement at will, and thus unilaterally remove the issue of therapy from the court's consideration upon any future reapplication for visitation.

Moreover, the rationale underlying the rule against conditioning visitation upon participation in therapy is that a court may not properly delegate to mental health professionals the ultimate determination of whether a parent will be awarded visitation rights. For example, in the case in which the rule was first articulated, the Family Court order appealed from suspended the father's visitation rights and granted the father leave to apply at the end of a six-month period for limited visitation rights, "upon presentation of a favorable report from his psychiatrist or psychologist" (*Matter of Grado v Grado, supra* at 854; *see also Gadomski v Gadomski, supra* at 677 [a court may not "delegate . . . to a mental health professional its authority

to resolve these [visitation] issues in the best interests of the children"]; *Jones v Jones*, 185 AD2d 228, 230 [1992] [disapproving provision of order and judgment directing that mother's application for resumption of visitation rights "must be accompanied by proof of ongoing therapy and a therapist's recommendation that visitation be resumed"]). Here, we specifically direct the Supreme Court to exercise its own discretion to determine whether and when the suspension of the father's visitation rights should be lifted. That determination will not be left to the judgment of any mental health professional, but will be based upon the Supreme Court's findings and conclusions.

Thus, the Supreme Court's entirely proper directive that the father participate in therapy as part of the case management plan can be, and must be, enforced in this case.

The father's remaining contentions are without merit. Prudenti, P.J., Florio, Goldstein and Lunn, JJ., concur.