Brummer v Wey (2018 NY Slip Op 07843)





Brummer v Wey


2018 NY Slip Op 07843


Decided on November 15, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 15, 2018

Friedman, J.P., Gische, Kahn, Singh, Moulton, JJ.


153583/15 2593 7095 7094 7096N &

[*1] Christopher Brummer, Plaintiff-Respondent-Appellant,
v
Benjamin Wey, et al., Defendants-Appellants-Respondents. Martin Redish, Steven Shiffrin and Eugene Volokh, Amici Curiae.


Catafago Fini LLP, New York (Tom M. Fini of counsel), for appellants-respondents.
Vorys, Sater, Seymour & Pease LLP, Pittsburgh, PA (Daren S. Garcia of the bar of the State of Ohio, State of Florida and Commonwealth of Pennsylvania, admitted pro hac vice, of counsel), and Clarick Gueron Reisbaum LLP, New York (Ashleigh Hunt of counsel), for respondent-appellant.
Hartman & Winnicki, P.C., Ridgewood, NJ (Daniel L. Schmutter of counsel), for amici curiae.



Order, Supreme Court, New York County (Manuel J. Mendez, J.), entered June 6, 2017, which granted plaintiff's motion for a preliminary injunction and temporary restraining order enjoining defendants from posting articles about him online for the duration of the action and requiring defendants to remove all articles they had posted about him, unanimously reversed, on the law and the facts, the motion denied, and the injunction vacated, without costs. Orders, same court and Justice, entered on or about October 13, 2017, and January 10, 2018, which granted plaintiff's motions to hold defendants in civil contempt, unanimously reversed, on the law, the finding of contempt vacated, and it is directed that, upon remand, further proceedings be had upon the contempt motions to determine whether defendants exercised control and authority over the subject website at the times of the alleged contemptuous conduct, without costs.
Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights," and "any imposition of prior restraint, whatever the form, bears a heavy presumption against its constitutional validity" (Ash v Board of Mgrs. of the 155 Condominium, 44 AD3d 324, 324-325 [1st Dept 2007] [internal quotation marks omitted], quoting Nebraska Press Assn. v Stuart, 427 US 539, 559 [1976], and Bantam Books, Inc. v Sullivan, 372 US 58, 70 [1963]; see also Rosenberg Diamond Dev. Corp. v Appel, 290 AD2d 239, 239 [1st Dept 2002] [prior restraints are "strongly disfavored"]). "[A] party seeking to obtain such a restraint bears a correspondingly heavy burden of demonstrating justification for its imposition" (Ash, 44 AD3d at 325, citing Organization for a Better Austin v Keefe, 402 US 415, 419 [1971], and Near v Minnesota ex rel. Olson, 283 US 697, 713 [1931]), and, to do so, must show that the speech sought to be restrained is "likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest" (Rosenberg, 290 AD3d at 239 [internal quotation marks omitted], quoting Terminiello v City of Chicago, 337 US 1, 4 [1949], reh denied, 337 US 934 [1949]). While these principles would permit the restraint of speech that "communicate[s] a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals" (Virginia v Black, 538 US 343, 359 [2003]), the speech at issue in this case — although highly offensive, repulsive [*2]and inflammatory — does not meet this exacting constitutional standard. Accordingly, the injunction under review must be vacated.
Plaintiff, a law professor, sat on the appellate panel of the Financial Industry Regulatory Authority, Inc. (FINRA) that affirmed the lifetime ban imposed on two stockbrokers, nonparties Talman Harris and William Scholander. Defendants allegedly control a website known as TheBlot, a tabloid-style platform that has published a substantial quantity of material attacking FINRA's ban of Harris and Scholander and the FINRA personnel, including plaintiff, who were involved in adjudicating that case. The attacks on plaintiff have included — in addition to name-calling, ridicule and various scurrilous accusations — juxtapositions of plaintiff's likeness to graphic images of the lynching of African Americans, and statements that the banning of Harris, who is African American, constituted a "lynching."
In this action, plaintiff, who is also African American, seeks, as here relevant, an injunction against the posting on TheBlot of material attacking or libeling him. In this regard, he argues that the lynching images posted alongside photographs of him on TheBlot should be understood as a threat of violence against himself. In the first order under review, entered June 6, 2017, Supreme Court granted plaintiff's motion for a preliminary injunction, enjoining defendants "from posting any articles about the Plaintiff to TheBlot for the duration of this action" and directing them to "remove from TheBlot all the articles they have posted about or concerning Plaintiff[.]" Defendants filed this appeal and then moved this Court for a stay of the preliminary injunction. After an interim stay of the preliminary injunction was granted by order dated June 15, 2017, this Court entered an order, dated August 1, 2017, lifting the stay
"to the extent of directing defendants to remove all photographs or other images and statements from websites under defendants' control which depict or encourage lynching; which encourage incitement of violence; or that feature statements regarding plaintiff that, in conjunction with the threatening language and imagery with which these statements are associated, continue to incite violence against plaintiff" (2017 NY Slip Op 81412[U]).
This Court's order of August 1 further provided that the interim stay of the preliminary injunction was lifted "so as to prohibit defendants from posting on any traditional or online media site any photographs or other images depicting or encouraging lynching in association with plaintiff (id.)."[FN1]
Initially, we reiterate that, although it may ultimately be determined that defendants have libeled plaintiff, "[p]rior restraints are not permissible . . . merely to enjoin the publication of libel" (Rosenberg, 290 AD2d at 239; see also Giffuni v Feingold, 299 AD2d 265, 266 [1st Dept 2002]; cf. Dennis v Napoli, 148 AD3d 446 [1st Dept 2017] [affirming preliminary injunction against sending unsolicited defamatory communications about the plaintiff, who was not a public figure, directly to her colleagues, friends and family]). Accordingly, as plaintiff appears to recognize, the preliminary injunction can be affirmed only if it enjoins a "true threat" against plaintiff (Virginia v Black, 538 US at 359 [internal quotation marks omitted]). We find, however, that the speech at issue, as offensive as it is, cannot reasonably be construed as truly threatening or inciting violence against plaintiff. Rather, the lynching imagery at issue was plainly intended to draw a grotesque analogy between lynching and FINRA's banning of Harris, [*3]who is an African American (and is identified as such in the posts)[FN2]. While this analogy is incendiary and highly inappropriate, plaintiff has not established that any reasonable viewer would have understood the posts as threatening or calling for violence against him. Moreover, even if the posts could reasonably be construed as advocating unlawful conduct, plaintiff has not established that any "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action" (Brandenburg v Ohio, 395 US 444, 447 [1969]).
Regardless of the subject injunction's constitutionality, defendants were not free to disobey an order within the jurisdiction of the issuing court, and not void on its face, until they had obtained judicial relief from it [FN3]. Further, contrary to defendants' contention, the injunction, at least as modified by this Court's partial stay, was not impermissibly vague or ambiguous. Moreover, we are satisfied that, assuming that defendants controlled the website, a substantial part of the posted material forming the basis for the contempt finding violated the terms of the injunction as modified by the partial stay. However, it cannot be determined on the present record whether defendants exercised control and authority over the website, an issue that we find to have been sufficiently preserved by defendants. Accordingly, we vacate the contempt
adjudication and direct that, on remand, an evidentiary hearing be held to determine whether defendants had control of the website at the times of the alleged contemptuous conduct. M-2593 - Christopher Brummer v Benjamin Wey Motion to file amicus curiae brief granted to the extent of deeming the brief filed.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 15, 2018
CLERK



Footnotes

Footnote 1:We note that this Court's partial lifting of the interim stay of the preliminary injunction does not constitute law of the case for purposes of our consideration of the merits of this appeal from the order granting the preliminary injunction (see Thompson v Armstrong, 134 A3d 305, 310 [DC 2016] ["law of the case is not established by denial of a stay"] [internal quotation marks omitted], cert denied __ US __, 137 S Ct 296 [2016]).

Footnote 2:For example, one post includes, alongside a silhouette image of a lynching, and under a photograph of Harris, the following statement: "Talman Harris: These MOFOs lynched me . . . .'" Another post states: "AFRICAN AMERICAN BROKER TALMAN HARRIS LYNCHED BY FINRA, BECAUSE HE IS BLACK."

Footnote 3:See Maness v Meyers, 419 US 449, 458 (1975); Walker v City of Birmingham, 388 US 307, 317-318 (1967); Howat v Kansas, 258 US 181, 189-190 (1922); Matter of Balter v Regan, 63 NY2d 630, 631 (1984), cert denied 469 US 934 (1984); Ketchum v Edwards, 153 NY 534, 538-539 (1897); Zafran v Zafran, 28 AD3d 753, 756 (2d Dept 2006); People v Harden, 26 AD3d 887, 888 (4th Dept 2006), lv denied 6 NY3d 834 (2006); Department of Hous. Preserv. & Dev. of City of N.Y. v Mill Riv. Realty, 169 AD2d 665, 670 (1st Dept 1991), affd 82 NY2d 794 (1993).