■ PAUL B. SCHNEIDER, Respondent, v PAMELA J. SCHNEIDER, Appellant. LEGAL AID SOCIETY, as Law Guardian for JESSICA SCHNEIDER, an Infant, Intervenor-Appellant. In the Matter of PAUL B. SCHNEIDER, as Father of JESSICA SCHNEIDER, an Infant, Respondent, v COMMISSIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK, Appellant, and PAMELA J. SCHNEIDER et al., Respondents. In the Matter of JESSICA SCHNEIDER, an Infant. PAUL B. SCHNEIDER, Appellant-Respondent; COMMISSIONER OF SOCIAL SERVICES, Respondent-Appellant.—Judgment, Supreme Court, New York County (Kenneth Shorter, J.), entered December 9, 1985, which granted the motion by respondent mother to consolidate the action *S. v S.* (index No. 74688/85), and the Family Court action *Matter of Jessica S.* (N5621/85), stayed all Family Court proceedings, remanded Jessica to the respondent Commissioner of the New York City Department of Social Services, ordered that the medical and psychiatric examination of Jessica cease, and required St. Vincent's Hospital records of her examination to be submitted to the court for in camera inspection, affirmed, without costs.

Order of the same court, entered the same date, which continued the writ of habeas corpus to produce Jessica to December 10, 1985, affirmed, without costs.

Fact-finding order and order of disposition, Family Court, New York County (Sara P. Schechter, J.), entered December 27, 1985, which made a finding of neglect against respondent father, and discharged the child to respondent mother, affirmed, without costs.

Order of the same court, entered February 19, 1986, which denied the order to show cause brought by the respondent Commissioner for, *inter alia,* renewal and modification of the aforementioned dispositional order, affirmed, without costs.

Order of the same court, entered April 3, 1986, which, *inter alia,* incorporated by reference the verbal order rendered on March 26, 1986, directing that respondent be allowed a period of unsupervised visitation with Jessica between March 26 and April 1, 1986, and that such visitation may occur in the Virgin Islands, affirmed, without costs.

Order, Family Court, New York County (Schechter, J.), dated April 25, 1986, which denied the respondent's motion

for, *inter alia*, renewal and modification of the dispositional order, affirmed, without costs.

Order, Supreme Court, entered May 6, 1986, which adjusted respondent's visitation hours by extending the Saturday hours by one-half hour to 9:00 A.M. to 6:30 P.M. and adding Wednesday dinner visitations from 4:00 P.M. to 6:30 P.M., affirmed, without costs.

In June 1985, the parents of Jessica, who was born in 1982, separated. In September 1985, her father commenced an action against her mother for divorce in Supreme Court, New York County. The mother filed a cross complaint for divorce. Both parties sought exclusive pendente lite custody of Jessica. The court held a hearing on the motions and took testimony between September 19 and October 1, 1985, when it recessed in order to permit a court-appointed psychiatrist, Dr. Levy, to evaluate the family. In the interim, the court granted the parties joint custody of Jessica, maintaining her in the marital home, and allowed the parents separate visitation schedules.

Preparatory to his report dated November 10, 1985, Dr. Levy interviewed Jessica and her parents on several occasions. During the mother's interview with Dr. Levy on November 4, she stated that the father exposed himself in the nude to Jessica in her presence and that Jessica touched his penis several times. Having herself been raped as a child by her stepfather, the mother was anxious, confused, and sought reassurance that the father's behavior was not sexual abuse. The father flatly denied the mother's accusations. Dr. Levy made no mention of the allegations in his report.

The mother sought counselling, and, on December 4, 1985, as a result of an interview with a caseworker from the Bureau of Child Welfare of the New York City Department of Social Services (City DSS), Jessica was removed from the home and placed in foster care. The following day, the respondent Commissioner of City DSS commenced a child abuse proceeding naming both parents as respondents in Family Court, New York County, pursuant to article 10 of the Family Court Act. The Family Court temporarily remanded Jessica to the protective custody of the respondent. Preliminary hearings on the necessity for the remand began that afternoon, and continued the next day. They were scheduled for conclusion the afternoon of December 9.

The morning of December 9, 1985, the father brought a writ of habeas corpus for the production of Jessica in Supreme Court, which was opposed by the respondent Commissioner

and the Law Guardian appointed to represent Jessica in the Family Court action. The child was not produced because she was undergoing an examination at St. Vincent's Hospital to determine whether there were physical findings to support the petition in the child abuse proceeding. The court indicated that the respondent's representative "did not act with good discretion" in removing Jessica. In reliance upon its general jurisdiction, and Jessica's status as its ward pending final resolution of the custody dispute, the Supreme Court, by order entered that day, consolidated the Family Court proceeding with the matrimonial action, stayed all Family Court proceedings, remanded Jessica to the respondent Commissioner, required the St. Vincent's Hospital records to be submitted to it for in camera examination, and ordered that the medical examinations of Jessica cease and that the records in the Family Court proceeding be transferred to it. After seeing the child, the court stated that it would "entertain an expedited continuation of the hearing or a hearing de novo concerning the underlying circumstances of this seizure [of Jessica]." By separate order entered the same day the court also continued the writ of habeas corpus to produce Jessica in court until December 10, 1985, in default of which a warrant would issue to the Sheriff to seize and produce her and to seize the person who had acknowledged service of the writ. An interim stay was granted by Justice Sandler of this court on December 10, 1985, and leave to appeal and a stay pending appeal were granted by this court on January 14, 1986.

The parties agreed to discontinue the preliminary hearings in Family Court, and, on December 17, 1985, the fact-finding hearing pursuant to Family Court Act § 1027 commenced. The testimony given is summarized in the dissent. In addition, it should be noted that Dr. Levy testified on behalf of the father.

In the third order appealed from, entered December 27, 1985, the Family Court dismissed the petition as to the mother, and made a finding of neglect against the father. After discharging the child into the mother's custody, the Family Court declined to conduct a dispositional hearing pursuant to Family Court Act § 1047 to deal with the issues of visitation and the provision of ancillary services. The court only asked the mother's attorney to make the Supreme Court aware of its fact findings. It denied the application by the respondent Legal Aid Society, as Law Guardian for Jessica, for a mental health study of the father and Jessica, an investigation and report (concerning the adequacy of the

physical environment), and an order of protection to limit the father's visitation to supervised situations.

On January 8, 1986, the Supreme Court ordered the family to submit to a reevaluation by Dr. Levy at the expense of the father, with particular reference to the conduct which allegedly verged upon child abuse. Pending receipt of the second report, the Supreme Court issued an interim order allowing unsupervised visitation by the father between 10:00 A.M. and 3:00 P.M. on Saturdays. During an off-the-record conference on January 26, 1986, these hours of visitation were apparently expanded slightly. By order entered February 19, 1986, the Family Court denied the order to show cause brought by respondent to reargue, renew or modify the dispositional order to add an order of protection and conditions for supervised visitation by the father, reasoning that the child's best interests were not served by having two different courts duplicating efforts and making orders.

Dr. Levy submitted his second report on or about March 3, 1986. Based upon this report, the transcript of the Family Court proceedings, and the findings of fact in the neglect proceeding, the Supreme Court entered the two visitation orders at issue on the appeal. The provisions of these orders are described in the dissent. On April 28, 1986, upon motion of the Legal Aid Society, it was also appointed as Law Guardian to represent the interests of the child in the Supreme Court.

We agree with the dissent that the preponderance of the evidence supports the finding of neglect against the father, and the dismissal of the petition against the mother. Although Jessica's rash and her mother's observations are corroborative of the statements made by Jessica to the Social Services caseworker (Matter of Tara H., 129 Misc 2d 508 [Fam Ct, Westchester County 1985]), the Family Court was in the best position to assess the credibility of the witnesses concerning any intent on the father's part to receive sexual gratification. Furthermore, we agree that, since the finding of neglect is adequate to protect Jessica, the absence of a finding of abuse is of little practical significance.

We part company with our colleague as to the propriety of the actions taken by the respective courts. In our view, each court acted within the ambit of its legislative grant of authority, while giving paramount consideration to the best interests of the child. The threshold issue is whether the Supreme Court abused its discretion in granting the writ of habeas corpus and consolidating the child abuse proceeding with the

prior matrimonial action. The dissent concedes, as it must, that the Supreme Court, the court of general original jurisdiction (NY Const, art VI, § 7), has concurrent jurisdiction over child abuse proceedings, notwithstanding the grant of "exclusive original jurisdiction" to the Family Court in article 10 proceedings. (Family Ct Act §§ 114, 1013; *Kagen v Kagen,* 21 NY2d 532, 538 [1968].) Since an extensive pendente lite hearing with respect to child custody had been held, and a psychiatric examination of the family had been ordered and completed before the commencement of the child abuse proceeding in Family Court, we believe that the Supreme Court properly determined to exercise its concurrent jurisdiction. The Supreme Court's authority to act as *parens patriae* for Jessica in resolving the custody dispute, and considerations of judicial economy, justified consolidating the child abuse proceeding with the pending matrimonial action and granting the writ of habeas corpus to produce Jessica.

The case of *People ex rel. McKay v Barbaro* (63 Misc 2d 138 [Sup Ct, Nassau ·County 1970]) is distinguishable since the Supreme Court here properly granted the writ based upon the exercise of its concurrent jurisdiction over the child abuse proceeding, rather than reviewing the determination of the Family Court to remand Jessica, on the merits. *McKay* is also inapposite since there the Family Court proceeding began first and the relator had appeared in Family Court three times before commencing the habeas corpus proceeding.

The Supreme Court here was as capable as the Family Court of handling the child abuse proceeding since the fundamental issue was the father's mental health. The Supreme Court has available a panel of psychiatrists and psychologists, and, like the Family Court, can, as it did here, order parents to submit to a psychiatric examination. The function of the panel (Family Counseling Unit) is comparable to the Mental Health Services agency which assists the Family Court in rendering dispositional orders, except that in the Supreme Court the parties must, in most cases, defray the cost of an examination. The Law Guardian and the respondent Commissioner assert that the Family Court should have conditioned visitation by the father upon his undergoing therapy. However, neither the Supreme Court nor the Family Court has that authority. *(Matter of Paris v Paris,* 95 AD2d 857 [2d Dept 1983]; *Matter of Grado v Grado,* 44 AD2d 854 [2d Dept 1974].) That, by legislative design, a wider range of dispositional alternatives is provided to the Family Court in processing abuse cases than the Supreme Court possesses in making

custody determinations, which can be tailored to the needs of a particular family (Family Ct Act § 1052), is irrelevant. Mental Health Services was the only germane ancillary service requested by the Law Guardian and the respondent commissioner.

The respondent Commissioner's contention that the orders of the respective courts deprived him of the opportunity to monitor the condition of the child is unconvincing. To the extent that he deemed it necessary, in view of his differences of opinion with the Law Guardian, the respondent Commissioner could have sought permission to intervene in the matrimonial action and, as a party, could have sought an order permitting him to monitor the situation in fulfillment of his statutory responsibility to safeguard Jessica's well-being. *(Compare, Matter of Weber v Stony Brook Hosp.,* 60 NY2d 208 [1983].) While he chose not to intervene, in our view, Jessica's interests were adequately protected by the Law Guardian, who appeared in the Supreme Court proceedings until formal appointment.

Nor can we agree with the dissent's argument that the Family Court abdicated its statutory responsibility to hold a dispositional hearing, following the fact-finding hearing. The Supreme Court could have handled the child abuse proceeding, essentially from start to finish, had the respondent Commissioner not immediately obtained a stay of its orders. Once the Supreme Court orders were stayed, prompt adjudication of the fact-finding hearing in Family Court was in the best interests of the child. The bifurcated nature of the proceeding was not desirable. Clearly, after the Family Court heard the testimony and evidence and assessed the demeanor and credibility of the witnesses in the neglect proceeding, it was the court ideally situated to conduct the dispositional hearing and render an appropriate dispositional order concerning custody and visitation. However, in these unusual circumstances the Family Court properly refused to hold a dispositional hearing, relying on the ability of the Supreme Court to determine custody as part of the matrimonial action, taking into account the Family Court's neglect finding. We agree with the Family Court that the child's best interests were served by confining litigation of the remaining visitation and custody issues to the matrimonial action, once the fact findings had been made. This procedure was necessary to deter the parents from racing between courts to maneuver for custody of and visitation with Jessica. As discussed *supra,* there was no relief sought in Family Court that could not be obtained from the Supreme

Court. The temporary exercise of jurisdiction by the Family Court, as a result of the stay granted by this court, did not render the well-founded exercise of concurrent jurisdiction by the Supreme Court thereafter inappropriate.

The orders issued by the Supreme Court with respect to visitation by the father, pendente lite, both of which were more restrictive than the original schedule of visitation, were consonant with the child's interest in having access to both parents. The Supreme Court did not err in failing to conduct a plenary hearing in conjunction with these orders, since pendente lite orders for the care and supervision of a child do not require a plenary hearing. Nor did the court err in relying upon the second report of Dr. Levy. That Dr. Levy disagreed with the respondent Commissioner as to the significance of the mother's allegations of possible sexual abuse and omitted them from his initial report; that he was paid by the father to testify on his behalf in Family Court; that he did not reinterview the father in preparing the second report; and, that he recommended shared custody, notwithstanding the neglect finding, is not evidence of bias. Concur—Kupferman, J. P., Fein, Milonas and Rosenberger, JJ.

Asch, J., dissents in a memorandum as follows: I dissent because I believe that to agree with the procedure resorted to by the Family and Supreme Courts in this matter would be inappropriate. In subsequent cases, our acquiescence will serve as a precedent to vitiate the purpose and mechanisms of the Family Court and hence, the needs of children who could be best served by that institution.

On the facts herein presented, it is my opinion that the Supreme Court, by interfering with the Family Court proceeding, abused its discretion, as did the Family Court, in failing to hold a dispositional hearing with respect to the child. The matter should be remanded to the Family Court for such dispositional hearing and further investigation, if required.

Jessica's father brought an action for divorce and custody of his daughter, in 1985. His wife filed a cross complaint for divorce and also moved for custody pendente lite. Physical custody of the child was given to the wife. The husband was granted visitation. A hearing on the pendente lite relief was begun in the Supreme Court.

In the course of testimony from both parties, the hearing was adjourned to obtain an evaluation from a psychiatrist, who, at that time, was mutually agreeable to both parties. Thereafter, in December of 1985, a petition, alleging that the

father had sexually abused the child, was filed in the Family Court. It also named the mother as a respondent. At the close of petitioner's case, the Family Court granted the mother's motion to dismiss the petition against her.

Based on the testimony of the mother, a caseworker, Nashak, a counselor, one Viboch, and a child psychologist, Dr. Pagano, in addition to the testimony of the father and the psychiatrist, Dr. Levy, the Family Court found that the father had engaged in inappropriate sexual conduct with respect to the child, in that the father had permitted the child to touch his penis on a maximum of six occasions and also exhibited himself in the nude before the child.

The Family Court found the father to be a neglectful parent, however, instead of holding that such conduct was sexual abuse, since it found no evidence of intent to receive sexual gratification on his part. After this finding of neglect as to the father, the Family Court then simply discharged the child to the mother. In view of the parents' involvement with their divorce proceedings in the Supreme Court, the Family Court Judge washed her hands of the problem and made no further disposition with respect to the child.

Thereafter, the Supreme Court ordered a reevaluation and granted the father visitation rights from 10:00 A.M. to 3:00 P.M. on Saturdays. The father requested permission to take the child to the Virgin Islands for a four-day period, having arranged for a baby-sitter. The court granted this request, which order was subsequently stayed by this court. Subsequently, after further testimony from Dr. Levy, the Supreme Court extended visitation to the father until 6:30 P.M. on Saturdays and on Wednesdays from 4:00 P.M. to 6:30 P.M.

Although there seems to be a close question as to whether the Family Court erred in making a finding of neglect only rather than sexual abuse, as both the Law Guardian and the Commissioner of Social Services argue, I think that, as a practical matter, it makes no difference in this case since there is a finding of neglect. I agree that the case was properly dismissed against the mother since it was her action which resulted in the institution of the abuse petition. further, I also agree with the Law Guardian and the Commissioner that the Supreme Court erred in interfering with the Family Court proceeding and that the Family Court itself erred in failing to hold a dispositional hearing and abdicating its responsibility to the Supreme Court.

Although the Supreme Court has general original jurisdic-

tion which enables it to preside over any case in law and equity, notwithstanding the legislative grant of "exclusive original jurisdiction" to the Family Court in article 10 proceedings, it must seem apparent that the court best suited to hear these charges and to decide on a disposition which would best suit the interests of the child would be the Family Court.

This court, in *Matter of Marsha B. F.* (110 AD2d 549, 550), held that "the failure to hold a dispositional hearing was error and requires reversal". *(See also, Matter of Tammie Z.,* 66 NY2d 1.) Thus, the statute requires there be a fact-finding hearing on the issue of neglect, and following that, a dispositional hearing where the court should inquire into the capacities of the parents to properly supervise the children, and such inquiry should be based upon up-to-date examinations and investigations so that a dispositional order appropriate to present conditions may be made. Here, the Family Court, with its Probation Department and with its ancillary agencies, would better be able to handle such a dispositional hearing. In addition, while the Commissioner, charged with overseeing the welfare of children who may be victims of abuse, initiated the Family Court proceeding, he is not a party to the matrimonial action in the Supreme Court. Thus, while the Commissioner heads the sole child protective service established under law (Social Services Law § 423 [1] [a]), the orders of both the Family Court and the Supreme Court have effectively precluded him from monitoring the condition of the child. While the Supreme Court does not lack the legal authority to do what it did, the action of the Supreme Court Justice was an abuse of discretion, as was the action of the Family Court Judge in failing to hold a dispositional hearing. Accordingly, the judgments of the Supreme Court granting the writ of habeas corpus and consolidating the Family Court proceedings with the matrimonial action in Supreme Court should be reversed, the application for the writ dismissed, and the neglect proceeding severed and remanded to Family Court.