OPINION OF THE COURT
Diane Kiesel, J.
The defendant, Christopher Allen, has brought the instant motion asking this court to recuse itself from presiding over his criminal trial to avoid the appearance of bias against him. The defendant has a history with this court, and it is because of that *236 history he seeks recusal. The People of the State of New York oppose the motion. For the reasons stated below, the defendant’s application is denied.
This court presided over the trial of the defendant’s divorce from his wife, Maria Axiomakaros, the complaining witness in this criminal proceeding. Ms. Axiomakaros sought a divorce from the defendant on the ground of cruel and inhuman treatment pursuant to Domestic Relations Law § 170 (1). The matrimonial trial was held on October 5, 2004 and November 29, 2004. In a written decision dated March 21, 2005 the court found Ms. Axiomakaros had proven that certain conduct of the defendant so endangered her physical or mental well-being that it was unsafe for her to cohabit with him, and a divorce was granted. (See Domestic Relations Law § 170 [1].)
The court found Ms. Axiomakaros proved by a preponderance of the evidence that she was the victim of a pattern of physical and emotional abuse that allowed the defendant to exercise power and control over her. With regard to the incidents of physical abuse, Ms. Axiomakaros testified to four specific incidents. Three of them resulted in injury to her. The first incident occurred in December 1997 when the defendant threw her down a staircase while she was pregnant. The second was in December 1998 when she suffered a broken nose. The third incident was in March 2001 when she sustained a hairline fracture of the face. The final incident was in October 2003 when the defendant made numerous telephone calls to her and threatened to burn down her house and kill her.
The criminal case against the defendant arises out of the aforementioned October 2003 incident and the People have charged him with aggravated harassment in the second degree. He argues the court already has made a finding in the matrimonial action that he placed the phone calls. The defendant further contends that, because the matrimonial decision was reported and also published in the New York Law Journal, the court will be under pressure to make factual determinations in this criminal proceeding consistent with those it made in the matrimonial action.
The court has not yet made a finding of fact as to whether the defendant committed the crime of aggravated harassment in the second degree. The court heard testimony about the subject incident only in the context of a pattern of cruel and inhuman treatment in a matrimonial action, a civil proceeding with a much lower burden of proof. All the court found in the *237 matrimonial action is that the October 2003 incident, when viewed in the context of whether Mr. Allen perpetrated three other incidents, established the defendant’s conduct endangered his wife’s physical and mental well-being so as to render it unsafe for them to remain married. Accordingly, there is no published finding of fact with which the court might feel “compelled” to be consistent.
The defendant further argues many of the incidents Ms. Axiomakaros testified about during the divorce trial will be raised to impeach her credibility in the criminal trial: He contends the court, having found her credible in the matrimonial trial, will be under pressure to find her credible in the criminal trial. This court has made no prior determination regarding whether the People of the State of New York, through the testimony of Ms. Axiomakaros, have proven Mr. Allen guilty of aggravated harassment just because it found, by a far lesser standard, he placed threatening calls to her. In addition, the court found only that Ms. Axiomakaros was credible in her presentation of a marriage plagued by physical, verbal and mental abuse and her own difficulty in extricating herself from it. Whether she will be a credible witness in a criminal case with different facts, with a much higher legal burden of proof and under questioning by counsel rather than by the defendant, who appeared pro se in the prior proceeding, is yet to be decided.
In support of his motion the defendant cites Code of Judicial Conduct Canon 2 requiring judges to “avoid . . . the appearance of impropriety.” He also cites numerous cases calling for judges to retain the appearance of impartiality and fairness at all times. While Canon 2 establishes the standard when considering recusal, it is the court that is the sole arbiter of whether recusal is necessary or wise. (See People v Moreno, 70 NY2d 403, 405 [1987]; Board of Mgrs. of Atrium Condominium v West 79th St. Corp., 19 AD3d 241 [1st Dept 2005]; People v Perez, 16 AD3d 191 [1st Dept 2005]; Matter of Johnson v Hornblass, 93 AD2d 732 [1st Dept 1983].) Moreno holds: “When the alleged impropriety arises from information derived during the performance of the court’s adjudicatory function, then recusal could surely not be directed as a matter of law.” (Id. at 405-406.) Instead, the matter is left to the discretion* of the court *238 and will be disturbed only when failure to recuse was an abuse of discretion. (Id.)
The judge in Moreno conducted a pretrial investigation in which he learned information that would not be admissible during trial. The Court of Appeals held that even under those circumstances, the judge did not have to recuse himself. “[A] Judge by reasons of. . . learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination based upon appropriate legal criteria, despite awareness of facts which cannot properly be relied upon in making the decision.” (Id. at 406 [internal quotation marks omitted].) Judges routinely exercise such “judicial discipline” when they conduct pretrial suppression hearings, making credibility determinations based on testimony and evidence only to later rule on the ultimate question of guilt at a bench trial. (See People v Whitehead, 305 AD2d 286 [1st Dept 2003]; People v Leon, 290 AD2d 277 [1st Dept 2002]; People v Dones, 250 AD2d 381 [1st Dept 1998].)
While the court presided over defendant’s divorce trial and learned he engaged in behavior constituting cruel and inhuman treatment, that information, like the information gleaned by the Court in Moreno and like information discovered during a pretrial hearing, was derived during the court’s adjudicatory function so as to make recusal purely discretionary. Moreover, the court appreciates that what it learned during the matrimonial trial is not facts which can be relied upon in deciding the very narrow issue to be determined in this criminal action, whether the People prove, beyond a reasonable doubt, each and every element of the crime of aggravated harassment in the second degree. Accordingly, the motion is denied.

 This court exercises similar discretion on a daily basis in its capacity as an integrated domestic violence court. In her 2001 State of the Judiciary address, Chief Judge Judith S. Kaye announced the creation of Integrated Do *238 mestic Violence Courts. These specialized courts are based on the “one family-one judge concept” pursuant to which the courts hear the criminal, family and matrimonial cases of families plagued by domestic violence. The purpose of these courts is to reduce the number of court visits for litigants; eliminate the possibility of conflicting orders from different courts; provide better social services to families dealing with domestic violence; and to allow the presiding justice to have a fuller understanding of the specific needs of the litigants before her. This goal is achieved while maintaining adherence to the different burdens of proof, rules of procedure and evidence and practice norms presented by the criminal, family and matrimonial cases.