OPINION OF THE COURT
Ellen Gesmer, J.
In this postjudgment matrimonial case, the plaintiff (father) moved by order to show cause for, among other things, an order consolidating into this action a Family Court proceeding in which he and his mother, Alice A. (grandmother), are charged with abusing and neglecting the parties’ daughter Lissette. Defendant Ivett A. (mother) and the Administration for Children’s Services (ACS) opposed the motion. On the return date of the motion, the court granted the father’s motion and issued an order consolidating all pending Family Court proceedings, including but not limited to the neglect case, with this action. As promised, the court is issuing this opinion to explain the reasons for that order.
Procedural History
The parties were married on November 7, 1984. They had two children, Helen, born in 1988, and Lissette, born in 1994. The father commenced this action for divorce in February 2002. On May 22, 2002, the parties entered into a stipulation which resolved all issues of child custody, visitation and support. In the stipulation, which was so-ordered by the court, the parties agreed that they would have joint legal custody of the children, and that the father would have sole physical custody. They further agreed that the mother, who had moved to Florida by then, was to have the children visit with her in Florida for six weeks each summer and for two weeks during school vacations. She was also to have overnight visits when she was in New York.
On March 4, 2004, this court signed an order to show cause directing the mother to return Helen to the father’s custody, and setting a date for a hearing on whether the mother should be held in contempt for failing to return Helen after a visit. The mother cross-moved for various relief. After a hearing, this court entered an order, dated July 13, 2004, continuing the award of sole physical custody to the father. This court retained jurisdiction over Lissette’s custody.
In November 2004, the court signed another order to show cause in which the father sought relief based on the mother’s alleged failure to return the children after a period of visitation.
A judgment of divorce, which incorporated the stipulation, was signed on November 15, 2004 and was entered on May 22, 2006.
*624 On or about July 21, 2006, Lissette went to Florida to visit the mother for the six-week period provided in the stipulation. Lissette did not return on September 1, and the mother did not provide the father with any information as to when she would return. The father then brought on a motion by order to show cause to hold the mother in contempt, to give him sole custody of Lissette and for other relief. The order to show cause, signed on September 21, 2006, also directed the mother to return Lissette forthwith. The return date of the order to show cause was October 11, 2006.
On October 4, 2006, ACS filed a petition in the Family Court alleging that the father and his mother had committed acts against Lissette which constituted abuse under article 10 of the Family Court Act. On the same day, the Family Court directed the temporary removal of Lissette from her father’s home, and ordered that she be placed in the custody of ACS.
On October 5, 2006, the mother filed a cross motion in this court for an order of custody of Lissette, and for transfer of the child protective proceeding to Florida or, in the alternative, for an order transferring custody of Lissette to the mother’s sister, pending determination of the article 10 proceeding.
On October 11, 2006, all parties, except the grandmother, appeared in the Supreme Court on the father’s order to show cause and the mother’s cross motion. At that time, the father asked that the court sign a second order to show cause, seeking an order consolidating the Family Court proceeding into this action and an award of attorneys’ fees. The court signed the order to show cause, and all parties then present accepted service. The court set a schedule for the submission of opposition papers and reply papers, and set argument for November 13, 2006. ACS and the mother submitted papers in opposition. The Law Guardian neither appeared at argument nor submitted papers in opposition. The grandmother appeared on November 13, waived service of the order to show cause, and filed an affidavit in support of the motion for consolidation.
On November 13, the mother also filed a motion to enforce various aspects of the equitable distribution award, and for other relief.
Motion to Consolidate
The father argues that this court has jurisdiction to consolidate the article 10 proceeding with this divorce action, citing Paul B. S. v Pamela J. S. (70 NY2d 739, 741 [1987]). Initially, *625 ACS, the Law Guardian and the mother all questioned the court’s authority to exercise jurisdiction over the article 10 proceeding. In their opposition papers, both ACS and the mother abandoned this position and conceded that the court has jurisdiction to consolidate the Family Court matter into this action. In fact, that position is compelled by the decision by the Court of Appeals in Paul B. S. In that case, the Court of Appeals affirmed a Supreme Court order which consolidated a child abuse case with a pending divorce case and held unequivocally that “Supreme Court’s concurrent jurisdiction over child abuse proceedings is unaffected by the grant of ‘exclusive original jurisdiction’ to Family Court over such proceedings” (70 NY2d at 741, citing NY Const, art VI, § 7; Family Ct Act §§ 114, 1013; Kagen v Kagen, 21 NY2d 532, 538 [1968]). Consequently, the question before this court is not whether it has the authority to consolidate the cases, but whether it should exercise its discretion to do so (CPLR 602 [b]; see also Geller v Geller, 247 AD2d 364 [2d Dept 1998] [abuse of discretion for Supreme Court to deny a motion to remove and consolidate a Family Court proceeding with the postjudgment proceedings pending in the Supreme Court matrimonial action]).
Both ACS and the mother suggest that the proper course would be for the Family Court to hold a fact-finding hearing, and then for either the Family Court or the Supreme Court to hold a combined disposition and custody hearing. The mother argues that Paul B. S. supports her position that the Family Court proceeding should be consolidated, if at all, only after the Family Court completes the fact-finding hearing. The court disagrees, and finds instead that Paul B. S. supports the immediate consolidation of the Family Court proceeding into this one. That case began in September 1985, when Paul B. S. commenced a matrimonial action in Supreme Court (see 127 AD2d 491, 492 [1st Dept 1987]). The Supreme Court held lengthy hearings on the parties’ cross motions for custody. On December 4, 1985, before the custody hearings were completed, ACS removed the parties’ child. The next day, ACS filed a neglect petition against both parents in Family Court and began a hearing on the necessity for the removal of the child (id.). On December 9, acting on the father’s application, the Supreme Court consolidated the Family Court proceeding and stayed the Family Court from taking any further action. The next day, ACS sought and obtained an interim stay of the Supreme Court order. The Family Court then proceeded with a *626 fact-finding hearing (id. at 493). Upon conclusion of the fact-finding hearing, the Family Court declined to hold a dispositional hearing, and the Supreme Court went ahead to determine the issues of custody.
On appeal, the Appellate Division and the Court of Appeals affirmed both the Supreme Court’s consolidation of the two proceedings and Family Court’s refusal to hold a dispositional hearing. In reaching this conclusion, the Court of Appeals noted that “before the commencement of the separate abuse/neglect proceeding in Family Court, the matrimonial action had been commenced in Supreme Court, an extensive pendente lite hearing on child custody had been held, and psychiatric examinations had been ordered and completed” (70 NY2d at 741). In this case, similarly, the divorce action was commenced first and, after extensive motion practice and a hearing, this court continued the award of sole physical custody of Helen and Lissette to the father. While it is true that this court has not ordered forensic examinations, this fact is not dispositive since the Family Court has also not done so. Consequently, I reject the mother’s argument that the absence of forensic examinations renders Paul B. S. distinguishable from this case.
In any event, in light of the history of this case, I find that the far more critical factor is the ability of this court to resolve all outstanding issues regarding this family. The importance of this factor is supported by the majority opinion in the Appellate Division, which strongly suggested that the better course in that case would have been for the Supreme Court to hear the entire matter “from start to finish” which it would have done “had the respondent Commissioner [of ACS] not immediately obtained a stay of its orders” (127 AD2d at 496). The Court explained that the issuance of the stay of the Supreme Court proceedings rendered a prompt adjudication of the fact-finding in Family Court to be in the best interests of the child, even though it had “not [been] desirable” to bifurcate the proceeding at all (id.). The Court went on to approve the Family Court’s refusal to exercise jurisdiction after the fact-finding as “necessary to deter the parents from racing between courts to maneuver for custody of and visitation with Jessica . . . [since] there was no relief sought in Family Court that could not be obtained from the Supreme Court” (127 AD2d at 496-497). The Court of Appeals did not disagree with this analysis.
Thus, the Appellate Division decision not only approved consolidation but also expressed a strong preference for having *627 one judge decide all of the matters concerning the family before it. In that respect, the decision is a precursor of the “one family-one judge” philosophy repeatedly advocated by Chief Judge Kaye (see, e.g., The State of the Judiciary 2002, at 7 [Jan. 14, 2002] <http://www.courts.state.ny.us./ctapps/StofJud2002.pdf>; Lippman, Court Reform: Vital to Judicial Accountability, NYLJ, Dec. 6, 2006, at 2, col 3; Report of Matrimonial Commn to Chief Judge of State of NY, at 25 [Feb. 2006] <http://www.courts, state.ny.us/ip/matrimonial-commission>), and increasingly recognized by the courts (Moss v Davis, 11 Misc 3d 1060[A], 2006 NY Slip Op 50324[U], *7 [Rochester City Ct 2006]; People v Allen, 9 Misc 3d 235, 237 n [Sup Ct, Bronx County 2005]). If the court were to deny the motion for consolidation, then this family’s legal problems would be addressed not by one but by several judges. The fact-finding would proceed before Judge Hoffman in Family Court. If Judge Hoffman were to find that the father had neglected or abused the child, then he would have to hold a dispositional hearing. If he were then to order that the child live with the mother, the mother would most likely seek a change in child support, which would not be heard by Judge Hoffman; the mother would have to seek that relief either in this court or before a support magistrate in Family Court. On the other hand, if Judge Hoffman were to dismiss the neglect proceeding, then the father would return to this court to pursue his contempt motion against the mother. In any event, I would have to hear the mother’s recently filed motion for enforcement of the equitable distribution award. In contrast, once I grant the motion to consolidate, I will be able to hear all of the pending matters concerning this family, including neglect and abuse, disposition and custody, child support, contempt and equitable distribution. Consequently, there is a strong policy argument in favor of consolidation.
Both ACS and the mother argue that hearing the case in Family Court will be more economical. Specifically, ACS argues that it would be less expensive to have the fact-finding hearing in Family Court because Judge Hoffman hears trials at “times certain.” That is the practice of this court as well. Moreover, there will be a considerable time saving by having one court hear all of the issues, since it is inevitable that information introduced at the fact-finding hearing will be relevant to other issues before this court.
ACS also argues that the Law Guardian in the Family Court proceeding, an attorney employed by the Legal Aid Society, will *628 not be able to continue as Lissette’s Law Guardian in the Supreme Court matter. Since the Family Court has already determined that Lissette is eligible for appointment of a law guardian under article 18-B of the County Law, I am authorized to continue that appointment, and I am issuing an order to that effect simultaneously with this decision (Judiciary Law § 35 [7]). Similarly, since the Supreme Court is now empowered to appoint counsel in any case in which the Family Court would have been required to do so under section 262 of the Family Court Act, I have continued the appointment of the counsel for the grandmother, who was initially appointed by the Family Court. (Judiciary Law § 35 [8].) In light of those appointments, I also have authority to authorize the payment of a mental health professional under article 18-B of the County Law (see County Law § 722-c; Judiciary Law § 35 [8]). Therefore, I reject the mother’s argument that forensic examinations would be more expensive in this court.
Finally, ACS argues that consolidation would not result in judicial economy because several parties would have to participate in proceedings in which they have no role. Specifically, ACS argues that the mother would not otherwise be a party to the fact-finding hearing, and that the grandmother would not otherwise be a party to the divorce case. However, this is not a real problem, since I will not require any party to participate in a hearing in which the party declines to appear. On the other hand, consolidation will permit parties to appear in proceedings in which they do have an interest, without having to engage in further motion practice. For example, the father has stated that he will defend against the neglect case by showing that the mother coached Lissette to testify against him. Therefore, it might be in the mother’s interest to participate in the fact-finding hearing. Consolidation will permit her to participate, while, absent an order of consolidation, she would need to seek leave of court to do so.
The other issues raised by the mother and ACS are irrelevant to the question of consolidation.