*272 OPINION OF THE COURT
Diane Kiesel, J.
Pending is a motion filed by the defendant seeking this court’s recusal from presiding over his criminal trial (which will be a bench trial) for the reason that it heard evidence and rendered a decision on a motion brought by order to show cause in a custody case between himself and his wife involving facts at issue here.* To cut to the heart of the matter, the defendant is charged with criminal contempt and is obviously concerned about how his prior incriminating testimony, specifically his admission to having had contact with his daughter in violation of a protective order, will impact his criminal case. The People oppose the motion. For the reasons stated below, the defendant’s motion is denied.
Background
The defendant was arrested on September 12, 2010 for harassing, menacing and attempting to assault his wife in front of their son. Mr. Bornstein pleaded guilty to disorderly conduct on June 29, 2011, was sentenced to a conditional discharge and required to enter and successfully complete a batterer’s program, which he did. He also was ordered to abide by a two-year final order of protection in favor of his wife and children. That order expires on June 28, 2013.
On October 19, 2012, the defendant was arrested and charged with violating the order of protection by having contact with one of his children and instructing her not to tell anyone, which allegedly upset her. He is charged with criminal contempt (Penal Law § 215.50 [3]) and endangering the welfare of a child (Penal Law § 260.10 [1]). This case is ready for trial.
The defendant’s prior criminal case set in motion a series of legal matters involving his family, which were transferred to this Integrated Domestic Violence Court. On February 14, 2011, the defendant’s wife, Rosa Silverio, filed a family offense petition against him. She also filed a petition for custody of their children, an 11-year-old girl and a nine-year-old boy. On July 18, 2011 the defendant filed a family offense petition against his wife alleging she beat him, their son and the family dog due to premenstrual stress disorder. Both family offense petitions were *273 withdrawn on February 22, 2012. On that date, the defendant filed his own petition for custody. The defendant has also filed for divorce.
Prior to his wife bringing the order to show cause, the defendant’s visitation was limited to the first three weekends of the month with his son, with all exchanges to take place inside the 50th Police Precinct. He was permitted daily email contact with his daughter, but no in-person visits. He was given a visit with his son on Rosh Hashana with the exchange also inside the precinct.
On November 1, 2012 Ms. Silverio moved by order to show cause to suspend contact between the defendant and their children, or in the alternative to severely limit contact because the defendant allegedly failed to confine himself to the terms of the visitation order. Specifically, he allegedly failed to show up at the police precinct for Rosh Hashana and instead sent emissaries — including a neighbor’s child and the defendant’s girlfriend — to his wife’s home to pick up their son. She further alleged that on October 10, 2012 the defendant hid behind a tree near her daughter’s school in violation of the order of protection and after making contact with the child, instructed her not to tell her mother. He allegedly warned his daughter that if she told, he could go to jail. The October 10 incident is the basis of this criminal case.
Hearings were conducted on the order to show cause. The defendant testified and readily admitted to having had contact— which he said was accidental — with his daughter. After considering the evidence, the court found the petitioner mother failed to prove by a fair preponderance of the evidence that the actions of the defendant negatively impacted their son and reinstated visitation. In contrast, it found the defendant had violated the order of protection by having willful contact with their daughter and that his actions had a negative emotional impact on her. Therefore, the defendant’s contact with his daughter remains restricted to email messages.
The Law and its Application to the Facts Here
The Integrated Domestic Violence (IDV) Courts were created statewide in 2004 by then Chief Judge Judith S. Kaye based on the concept of “one family-one judge.” After consulting with the Administrative Board of the Courts and with the consent of the Court of Appeals, Judge Kaye promulgated part 41 of the Rules of the Chief Judge, which provided that the IDV courts
“be devoted to the hearing and determination, in a *274 single forum, of cases that are simultaneously pending in the courts if one of them is a domestic violence case in a criminal court and the other is a case in Supreme or Family Court that involves a party or witness in the domestic violence case . . . (People v Correa, 15 NY3d 213, 218-219 [2010], citing 22 NYCRR 41.1 [a] [1].)
In articulating a rationale for the IDV courts, the Court of Appeals has noted:
“The intent of the IDV directive was to allow matters involving a single family to be resolved in one court by the same jurist, thereby eliminating fragmented judicial adjudication and relieving the parties of the burden and costs of having multiple actions pending in different courts. In addition to streamlining the litigation process for litigants and providing better access to community services for families, the new IDV Parts also increased judicial efficiency by avoiding duplication of effort by multiple courts, reducing scheduling conflicts and avoiding inconsistent outcomes.” (Correa, 15 NY3d at 219.)
These goals are achieved while adhering to the substantive law of each of the categories of cases, including burdens of proof, rules of evidence, rules of procedure and practice norms.
The legal authority of the Chief Judge to create the IDV courts was upheld by the Court of Appeals in Correa. A key component of the IDV court is the ability of one judge to adjudicate all matters. Notwithstanding, that judge must avoid prejudging cases and must rely solely on admissible evidence. (People v Allen, 9 Misc 3d 235 [Sup Ct, Bronx County 2005].)
In urging recusal, the defendant cites the mandatory requirements of Judiciary Law § 14, which states in relevant part:
“A judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy.”
That section is not applicable here. The court is not a party to this family’s cases, is not related to any Bornstein family member, has not acted as their counsel and has no interest in the outcome of these proceedings.
Absent any mandatory recusal requirement, the determination of whether a judge should recuse herself is discretionary. *275 (See People v Moreno, 70 NY2d 403, 405 [1987].) The decision is a matter of personal conscience that will not be reversed unless it constitutes an abuse of discretion. (People v Smith, 63 NY2d 41, 68 [1984], cert denied 469 US 1227 [1985].) The Rules of the Chief Administrator of the Courts require that a judge “avoid impropriety and the appearance of impropriety” and that she “act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.” (22 NYCRR 100.2 [A].) The only basis for this motion is the fact the defendant made admissions in the order to show cause proceeding over which this court presided. That fact, standing alone, does not warrant discretionary recusal. Judges are often made aware of facts about a particular case which they must discard if and when it goes to trial. A judge, through “ ‘learning, experience and judicial discipline, is uniquely capable of distinguishing the issues and of making an objective determination’ based upon appropriate legal criteria, despite awareness of facts which cannot properly be relied upon in making the decision.” (Moreno, 70 NY2d at 406.)
Judges exercise such “judicial discipline” every day. Thus, a judge who presided over a two-defendant pretrial Huntley hearing and the jury trial of one defendant did not abuse his discretion by presiding over that defendant’s accomplice’s later bench trial. “An attempt by the defendant to equate knowledge acquired from the pretrial adjudication and the accomplice’s trial ‘with an appearance of impropriety thus requiring recusal for bench trial purposes, finds no support in law, ethics or sound policy.’ ” (People v Burch, 142 AD2d 586, 586 [2d Dept 1988], lv denied 72 NY2d 955 [1988], citing Moreno, 70 NY2d at 407.) Similarly, a judge who accepted a guilty plea and heard a defendant’s allocution regarding his role in a crime was not required to recuse himself when the plea was withdrawn and the case set down for trial. (People v Webb, 159 AD2d 289 [1st Dept 1990], lv denied 76 NY2d 744 [1990].) A judge need not recuse himself from ruling on the legitimacy of a search warrant he issued. (People v McCann, 85 NY2d 951, 953 [1995].) Nor did a Family Court judge abuse her discretion when she refused to recuse herself from a custody modification proceeding in which the father’s misuse of alcohol was a key issue despite the fact she had previously presided over the father’s arraignment on a driving while intoxicated offense in her capacity as a local town judge. (Matter of Kelley v VanDee, 61 AD3d 1281 [3d Dept 2009].) And, most commonly, judges are not required to recuse them *276 selves when, after conducting pretrial suppression hearings where they assess witness credibility and make legal rulings based on their testimony, they later preside at bench trials where they determine the ultimate question of guilt. (See e.g. People v Allen, 9 Misc 3d at 238, citing People v Whitehead, 305 AD2d 286 [1st Dept 2003], lv denied 100 NY2d 600 [2003]; People v Leon, 290 AD2d 277 [1st Dept 2002], lv denied 98 NY2d 698 [2002] and People v Dones, 250 AD2d 381 [1st Dept 1998].)
The defendant argues:
“This is not a situation akin to a judge presiding over a pre-trial suppression hearing and then acting as a fact-finder at a bench trial. In that case, a judge is deciding legal and factual issues regarding evidence admissibility, whereas here, the Court will be deciding guilt or non-guilt after having already ruled on culpability and credibility issues in a related case.”
But the defendant fails to explain why this situation is not “akin” to a suppression hearing. Credibility of witnesses is always a consideration in pretrial hearings. Moreover, in a suppression hearing, the court considers evidence directly related to the criminal case before it. When a police officer testifies about a gun recovered from a defendant, for example, that officer’s credibility about the basis for the search is absolutely at issue. If the officer testifies at a subsequent bench trial, the judge must determine anew whether that officer is credible.
The order to show cause here was litigated by a different party (the petitioner as opposed to the People of the State of New York), with a different goal (suspending visitation in the child’s best interest as opposed to accountability for allegedly committing a crime) under a different burden of proof (fair preponderance of the evidence versus beyond a reasonable doubt). As the defendant in a criminal case, Mr. Bornstein has a constitutional right to remain silent. If he chooses to exercise his right to remain silent in his upcoming criminal case, the court can not and will not consider his prior testimony when deciding whether the People have proved him guilty beyond a reasonable doubt of the charges he faces here. And, if he exercises his right to testify, the People may impeach him with his prior testimony, as they could before any court, no matter which judge is presiding. That Mr. Bornstein made a strategic decision to testify in the order to show cause matter does not warrant recusal here.
*277 The cases cited by the defendant illustrate the reluctance of the appellate courts to compel judicial recusal, particularly when the allegedly prejudicial information was obtained through the court process, as it was in this case. Even when it is not, recusal is still left to the discretion of the individual judge. “When the alleged impropriety arises from information derived during the performance of the court’s adjudicatory function, then recusal could surely not be directed as a matter of law.” (Moreno, 70 NY2d at 405-406.) In Moreno, the trial judge learned facts about the case before him by conducting his own investigation. Even there, the Court of Appeals determined recusal was not mandatory. Instead, it was left to the discretion of the court, to be disturbed only when failure to recuse was an abuse of discretion. (Id.) And, in Matter of Johnson v Hornblass (93 AD2d 732 [1st Dept 1983]), also cited by the defendant, where the judge visited a defendant in jail to see for himself if he was safely housed after learning the Department of Corrections failed to abide by his order to take precautions for the defendant’s safety, the judge was found not to have abused his discretion by remaining on the case, even though the appellate court concluded recusal would have been the wiser course of action.
Here, the very essence of the IDV court requires the cases of one family be assigned to one judge. To then mandate recusal in a criminal case — with a higher burden of proof, different parties and different legal issues — because cases involving related family or matrimonial matters have been litigated previously would undermine the very purpose of the IDV courts. Nor, under the circumstances of this case, is recusal necessary to avoid an appearance of impropriety. This case is being handled exactly as any other in the IDV court. The court has no information other than what has been presented in court in the prior matter and appreciates the impropriety of relying on it to determine the outcome of the criminal case before it. This court has made no predetermination of whether the defendant is guilty beyond a reasonable doubt of anything and is able to be fair and impartial. The motion is therefore denied.

 The defendant’s attorney represents in this motion he was informed by the assistant district attorney assigned to this case she will move to reduce the charges to B misdemeanors which would eliminate his right to a trial by jury. (See People v Urbaez, 10 NY3d 773 [2008].)